**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-2563
_____

UNITED STATES OF AMERICA

v.

ROMANUS OKORIE,

Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2:07-cr-00477)
District Judge:  Hon. William H. Walls

Submitted Under Third Circuit LAR 34.1(a)
March 18, 2011

Before:  BARRY, CHAGARES, and ROTH, Circuit Judges.

(Filed  April 26, 2011)

_____

OPINION
_____

CHAGARES, Circuit Judge.

Romanus Okorie appeals his conviction, asserting that the District Court erred in admitting various pieces of evidence during his trial.  For the reasons set forth below, we will affirm the District Court's evidentiary decisions and Okorie's conviction.

I.

Because we write solely for the benefit of the parties, we will only briefly recite the facts. Okorie ran a business preparing taxes. The allegations of the underlying conviction were that he falsely claimed that his clients were sole proprietors of businesses and then created excessive business expenses to decrease his clients' taxable incomes. He would then file tax returns without first presenting them to his clients for review and signature, and also failed to identify himself as the preparer of the returns. His scheme was discovered when one client, Maria Brown, received her refund check, realized that it was for far too much, returned it to the IRS, and began cooperating in an investigation of Okorie. As part of this investigation, the Government received a warrant to search Okorie's home and to seize any documents relating to the preparation of taxes for the years 2003 and 2004. In executing this warrant, the Government agents were required to sort through stacks of papers that had not been separated by year, and noticed that forms from 2002 also contained suspicious information. The Government then received a second search warrant and seized all documents relating to 2002 as well.

Okorie was indicted on June 11, 2007, and charged with ten counts of preparing and filing false tax returns only for the years 2003 and 2004, in violation of 26 U.S.C. § 7206(2). He was convicted by a jury on all counts on January 22, 2008, and was sentenced to 72 months of imprisonment on May 14, 2008. The instant appeal was filed on May 15, 2008.

II.

The District Court had jurisdiction over this case pursuant to 18 U.S.C. § 3231 and this Court has jurisdiction under 28 U.S.C. § 1291. We review the underlying factual findings of a District Court's refusal to suppress evidence for clear error, but exercise plenary review over the application of the law to these factual findings. United States v. Brown, 595 F.3d 498, 514 (3d Cir. 2010). On issues regarding the District Court's decision to admit evidence, we review for abuse of discretion, United States v. Kemp, 500 F.3d 257, 295-96 (3d Cir. 2007), and this includes consideration of whether the admission of evidence violated the Sixth Amendment's Confrontation Clause. United States v. Jimenez, 513 F.3d 62, 76-77 (3d Cir. 2008).

III.

Okorie first argues that the District Court erred in denying his application to suppress all evidence seized from his residence because the Government conducted a broader search than authorized by the first warrant when it looked at documents from 2002 as well as 2003 and 2004. He argues that all evidence seized, including the evidence that was plainly within the scope of the first search warrant, must be suppressed "due to the blatant Fourth Amendment violation" that occurred when the executing officials viewed his 2002 documents, which were not within the scope of the first warrant.

As a general matter, the exclusionary rule is used only in circumstances where it will have a deterrent effect. United States v. Leon, 468 U.S. 897, 906 (1984). "Whether the exclusionary sanction is appropriately imposed in a particular case . . . is 'an issue

3

separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct.'" Id. (quoting Illinois v. Gates, 462 U.S. 213, 223 (1983)).

We see no reason that would justify the suppression of the 2003 and 2004 documents that were collected under the first warrant. Okorie does not allege that the first warrant was defectively obtained or executed. Instead, he argues that the overbreadth of the first search justifies the suppression of all evidence obtained during that search, regardless of whether it was plainly within the scope of the warrant. The conduct at issue in this case, however, is insufficient to impose the "substantial social costs exacted by the exclusionary rule." Id. at 907. Okorie's files were not neatly organized or easily separable, and the agents were required to look through all of Okorie's papers in order to separate out those that were from the years 2003 and 2004. The evidence introduced at trial was obtained as a result of a valid warrant that was properly executed, and we will affirm the District Court's refusal to suppress this evidence.[1]

---

[1] We also note, per Okorie's contention that the search exceeded the scope of the initial warrant, that the Supreme Court has made clear that "elaborate specificity" in a warrant is not required. United States v. Ventresca, 380 U.S. 102, 108 (1965). Whether evidence is within a search warrant's scope requires not a "hypertechnical" analysis, but a "common-sense, and realistic" one. United States v. Srivastava, 540 F.3d 277, 291 (4th Cir. 2008). In line with such reasoning, we have observed that "[w]hen an entire, discrete body of evidence is described, the naming of every component of that body is mere surplusage." United States v. Kepner, 483 F.2d 755, 763 (3d Cir. 1988) (quotation marks omitted). In addition, "the government is to be given more flexibility regarding the items to be searched when criminal activity deals with complex financial transactions." United States v. Yusuf, 461 F.3d 374, 395 (3d Cir. 2006). On the facts here, both the warrant and the search executed pursuant to it easily pass muster.

4

Okorie next argues that the District Court erred in allowing Maria and Raymond Brown to testify as to their dealings with Okorie, despite the fact that their experience did not form one of the underlying counts of Okorie's indictment. He argues that the evidence was cumulative and that the Browns' testimony could not have served any non-cumulative purpose other than to encourage the jury to convict based upon prior bad acts or a propensity to commit crime, neither of which is permitted under Federal Rule of Evidence 404(b).

Federal Rule of Evidence 404(b) provides as follows:

[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

This Court has noted that the threshold established by this rule is not overly high, and that almost all evidence can be admitted under 404(b) so long as it is for a purpose other than to demonstrate the defendant's bad character in order to encourage the jury to convict on the basis of a propensity to commit crime. United States v. Green, 617 F.3d 233, 248-29 (3d Cir. 2010).

In this case, the testimony of the Browns went to the non-propensity purpose of demonstrating motive, voluntariness, and lack of mistake, as well as providing background information regarding how the IRS began its investigation. The testimony helped demonstrate that the criminal conduct was initiated by Okorie and not his clients,

and, because Maria Brown returned her refund check, provided testimony from individuals without any motivation to lie. In addition, the District Court provided a limiting instruction immediately after each of the Browns testified, and then again when charging the jury. The District Court did not abuse its discretion in allowing this testimony, and we will affirm its decision on this issue.

Finally, Okorie asserts that the District Court's decision to allow Deborahann Westwood, the custodian of records for the New Jersey Department of the Treasury, and Margaret Coe, a Human Resources specialist with the IRS, to testify regarding the results of employment-records searches in their respective departments. Although the Government initially planned to introduce only a certification of the non-existence of an official record, the District Court directed that individuals be produced to testify to this fact in order to avoid Confrontation Clause issues. This testimony was introduced to demonstrate that Okorie never worked for either of these agencies, despite his representations to the contrary to his clients. Okorie argues that he has a Sixth Amendment right to cross-examine those who actually performed the searches of the records, and that the production of a supervisor is insufficient to meet the Constitution's demands.

The Sixth Amendment prevents, with limited exceptions, the introduction of any testimonial statement at trial without the opportunity for the defendant to cross-examine the individual who made the statement. Crawford v. Washington, 541 U.S. 36, 50-51 (2004). The Supreme Court's more recent decision in Melendez-Diaz v. Massachusetts, 129 S. Ct. 2527 (2009), makes clear that the type of report produced in this case would

6

certainly constitute a testimonial statement. Unlike <u>Melendez-Diaz</u>, however, where only a single analyst's report was at issue, this case deals with a report that was produced through the work of multiple individuals. In the present case, although Westwood and Coe did not conduct the entire search personally, the testimonial import of the report that was produced was simply that Okorie had not worked in either of their organizations. Westwood and Coe certainly had sufficient knowledge about this report to justify the admission of their testimony; both had knowledge of their institutions' records, the searches conducted, and their results, and both were subject to cross-examination on these issues. That they were not the individuals who physically sorted through every piece of paper or who personally typed the search into the computer program does not cause a constitutional problem. They both had knowledge of the ultimate testimonial fact supplied by the report (that Okorie had not worked in either agency), and had knowledge of the process that produced this testimonial fact. We certainly are not prepared to state the District Court abused its discretion in its decision to admit the evidence, and we therefore will also affirm its decision to allow the testimony of Westwood and Coe.

IV.

For the foregoing reasons, we will affirm the judgment of the District Court.