[Cite as *State v. Groce*, 2019-Ohio-1007.]

### IN THE COURT OF APPEALS OF OHIO

### TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 18AP-51 |
| | | (C.P.C. No. 16CR-3448) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Drakkar D. Groce, | : | |
| Defendant-Appellant. | : | |

## D E C I S I O N

### Rendered on March 21, 2019

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Kimberly M. Bond*, for appellee. **Argued:** *Kimberly M. Bond.*

**On brief:** *Dennis C. Belli*, for appellant. **Argued:** *Dennis C. Belli.*

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Defendant-appellant, Drakkar D. Groce, appeals from a judgment entry of the Franklin County Court of Common Pleas finding him guilty, pursuant to jury verdict, of one count of engaging in a pattern of corrupt activity, one count of possession of cocaine, one count of illegal manufacture of drugs, and five counts of trafficking in cocaine, along with firearm specifications accompanying each conviction. For the following reasons, we affirm in part and reverse in part.

## I. Facts and Procedural History

{¶ 2} By indictment filed June 24, 2016, plaintiff-appellee, State of Ohio, charged Groce with one count of engaging in a pattern of corrupt activity in violation of R.C. 2923.32, a first-degree felony; one count of trafficking in cocaine in violation of R.C.

2925.03, a first-degree felony; one count of possession of cocaine in violation of R.C. 2925.11, a first-degree felony; one count of illegal manufacture of drugs in violation of R.C. 2925.04, a second-degree felony; and four counts of trafficking in cocaine in violation of R.C. 2925.03, fifth-degree felonies. All eight charges contained accompanying one-year firearm specifications pursuant to R.C. 2941.141(A). The indictment charged Groce along with three codefendants, Alvin Clayton Dent, Jr., Wendell Edward Brandon, and William Lamont Walker, Jr. Groce entered a plea of not guilty.

{¶ 3} At a joint trial for Walker, Dent, and Groce beginning May 15, 2017, Lawrence E. Gauthney, a detective with the Columbus Division of Police, testified that police began receiving community complaints in February 2016 about activities taking place in and around 1639 Greenway Avenue.[1] These community complaints prompted Detective Gauthney to conduct "spot checks" and visual surveillance of the property. (Tr. Vol. II at 396.) Detective Gauthney testified that his observations of the property were consistent with what he would expect to find at a drug house used for drug trafficking. These observations included seeing numerous individuals approach the residence, go inside the residence for short periods, and exit the residence.

{¶ 4} After conducting surveillance, Detective Gauthney decided to use a confidential informant who, on March 28, 2016, successfully purchased crack cocaine in the house. Detective Gauthney testified he then obtained a no-knock warrant to search the house based on his personal observations and on the controlled buy of narcotics.

{¶ 5} The next day, on March 29, 2016, Detective Gauthney led a team of law enforcement officers in executing the search of 1639 Greenway Avenue. Detective Gauthney testified that three individuals, namely Brandon, Anthony McNair, and Taiwain Johnson, were inside the residence at the time and all three were detained. Police seized evidence from the house including drugs, money, guns, scales, baggies, and other items indicative of drug trafficking activity. Detective Gauthney testified that Johnson had $1,256 in cash on his person when police searched him. During the search, Detective Gauthney noticed security cameras and a security monitor in the house. Detective Gauthney testified

---

[1] Brandon entered into a plea agreement prior to trial.

he seized the cameras and equipment and subsequently downloaded the security camera footage to a disc.

{¶ 6} Over the objections of the codefendants, the state played the video footage obtained from the security system at trial while Detective Gauthney narrated the video clips, giving his description of the events portrayed on the video. The trial court provided a limiting instruction to the jury that Detective Gauthney was testifying to his "belief and understanding" of what the video showed. (Tr. Vol. II at 544.) The trial court further instructed the jury that it was for the jury to decide the ultimate issue of whether the individuals in the video had cocaine.

{¶ 7} The state's presentation of the surveillance footage contained 25 separate clips purporting to document at least 15 drug sales. All of the video clips show activity from March 29, 2016, the day police executed their search warrant of the house. In his narration of the surveillance footage, Detective Gauthney identified Walker, Groce, and Dent, as well as other individuals who appear in the footage. Groce is present in video clips 2, 3, 6, 7, 9-13, 15, and 17-19. Detective Gauthney then narrated the individual video clips, describing the behavior of Groce and the other people captured on the surveillance video.

{¶ 8} Detective Gauthney testified that clips 1, 5, and 20-24 show Brandon appearing to prepare drugs for sale and/or conducting drug transactions. Video clips 2, 3, and 6 show Groce preparing baggies of what appears to be crack cocaine and selling those baggies. In video clip 9, Groce is seen leaving the house with a baggie. Video clips 18 and 19 show Groce working in the kitchen, cutting up what Detective Gauthney testified appears to be a large rock of cocaine, as well as exchanging drugs for money.

{¶ 9} Detective Gauthney further testified that video clip 7 shows an apparent drug transaction, and it also shows Dent working with Groce to adjust the surveillance camera. Groce and Dent spend approximately 14 minutes adjusting the camera. Video clips 10 and 11 show Groce and Dent working together and individually to prepare what appears to be crack cocaine for sale. More specifically, these videos show Dent weighing crack and giving it to Groce to put in a baggie, and it further shows Groce and Dent working together as Dent breaks down a large chunk of crack, weighs the pieces, and bags them.

{¶ 10} Video clips 12, 13, and 15 show Walker, Groce, and Dent all working together. In video 12, the three men are seen packing baggies of what appears to be crack cocaine.

Dent appears to watch as Groce cooks crack, and Dent then appears to inspect the product. At one point, Dent hands Walker a baggie with a large piece of crack that Detective Gauthney estimates to be approximately one-fourth of an ounce, and Walker inspects the baggie and hands it back. It appears the three men are talking to each other as they prepare their product. Video clip 12 also shows Dent and Walker counting large wads of cash. Video clip 13 shows Walker, Dent, and Groce talking in the kitchen. Dent and Walker are eating something while they count money. In video clip 15, Dent and Walker are present while Groce breaks off a piece of crack and weighs it.

{¶ 11} In video clip 16, Walker appears to cook crack cocaine and then conduct a transaction. Again in video clip 17, Walker is seen cooking what appears to be crack cocaine. While Walker is cooking, Groce walks in, carrying cash, with an unidentified individual. It then appears that Groce places drugs in and removes drugs from the same cabinet where police seized drugs during their search. The surveillance footage also shows police entering the house approximately three hours after the defendants are last seen on camera.

{¶ 12} During the search, police found cocaine in the kitchen cabinet as well as in other places inside the house. The Columbus Police Crime Laboratory tested and weighed the drugs recovered from the house. The total weight of cocaine seized from the house was 28.942 grams. Detective Gauthney testified that the total value of that cocaine was $1,400. Lisa Malloure, an analyst from the Columbus Police Crime Laboratory, explained the difference between powder cocaine and crack cocaine, testifying that powder cocaine is "cook[ed]," or processed, into crack cocaine. (Tr. Vol. IV at 821.) Malloure testified she examined several items seized from the house, and she confirmed the presence of cocaine in a measuring cup and on two scales.

{¶ 13} Additionally, police seized three guns during the execution of the search warrant. The parties stipulated that all three handguns were operable.

{¶ 14} At the conclusion of trial, the jury returned guilty verdicts on all counts related to Groce, including the accompanying firearm specification for each count. Following a December 20, 2017 sentencing hearing, the trial court sentenced Groce to an aggregate prison term of 28 years. The trial court further ordered his sentence run consecutive to his 8-year sentence in Franklin C.P. No. 16CR-3016 for a total of 36 years in

prison. The trial court journalized Groce's convictions and sentence in a December 21, 2017 judgment entry. Groce timely appeals.

## II. Assignments of Error

{¶ 15} Groce assigns the following errors for our review:

[1.] Defendant-appellant's convictions for engaging in a pattern of corrupt activity, illegal manufacture of drugs, possession of cocaine, trafficking in cocaine, and firearm specifications, are not supported by sufficient evidence to satisfy the requirements of the due process clause of the Fourteenth Amendment to the United States Constitution.

[2.] The admission of the lead detective's narration of multiple video clips from the home security surveillance system and his opinions that the images show defendant-appellant engaging in the drug offenses charged in the indictment, violated the rules of evidence, invaded the province of the jury, and deprived him of his right to due process and a fundamentally fair jury trial under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

[3.] The admission of photographs of the anti-"snitch" tattoos of a codefendant (who did not proceed to trial) and the lead detective's testimony about witnesses' hypothetical fears of cooperating with law enforcement violated the rules of evidence and deprived defendant-appellant of his right to due process and a fundamentally fair jury trial under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

[4.] Defendant-appellant was denied his right to due process and a fundamentally fair jury trial under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution due to improper closing remarks by the prosecutor: A) falsely representing to the jury that the home security video recording equipment was motion-activated, B) expanding the scope of the corrupt activity count beyond the predicate acts listed in the indictment, and C) urging the jury to consider the erroneously admitted anti-"snitch" tattoo photographs for a forbidden purpose.

[5.] Defendant-appellant was denied his right to the effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution due to his attorney's: A) failure to object to the admission of the

written report of the lead detective's interpretation of the contents of the video clips, B) failure to request a jury instruction regarding the continuity requirement for proving a pattern of corrupt activity, and C) failure to object to the trial judge's inadequate response to a jury question.

[6.] The prosecutor's peremptory strike of an African-American juror on account of her race violated defendant-appellant's rights under the equal protection clause of the Fourteenth Amendment to the United States Constitution.

[7.] The trial court's failure to merge defendant-appellant's trafficking convictions and firearm specifications for sentencing violated R.C. 2941.25 and/or R.C. 2929.14 and his rights under the double jeopardy clause of the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

## III.  First Assignment of Error – Sufficiency of the Evidence

{¶ 16} In his first assignment of error, Groce argues his convictions were not supported by sufficient evidence.

{¶ 17} Whether there is legally sufficient evidence to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).  Sufficiency is a test of adequacy. *Id.*  The relevant inquiry for an appellate court is whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime proven beyond a reasonable doubt.  *State v. Mahone*, 10th Dist. No. 12AP-545, 2014-Ohio-1251, ¶ 38, citing *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, ¶ 37.

### A.  Engaging in a Pattern of Corrupt Activity

{¶ 18} Groce was convicted of one count of engaging in a pattern of corrupt activity, correlating to Count 1 of the indictment.  Pursuant to R.C. 2923.32(A)(1), Ohio's Racketeer Influenced and Corrupt Organizations ("RICO") statute, "[n]o person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity."  As defined in R.C. 2923.31(I), corrupt activity includes "engaging in, attempting to engage in, conspiring to engage in, or soliciting, coercing, or intimidating another person to engage in" conduct including the

predicate offenses of possession, manufacturing, and trafficking of drugs. *See also State v. Johnson*, 10th Dist. No. 13AP-997, 2015-Ohio-3248, ¶ 61-62.

{¶ 19} Groce argues the evidence was insufficient to show he engaged in a "pattern" of corrupt activity. More specifically, he asserts that the only evidence at trial showed alleged drug activity all occurring within a few hours of the same day and, therefore, there was insufficient evidence to demonstrate the requisite longevity of a "pattern" of corrupt activity. The state responds that the definition of "pattern of corrupt activity" contained in R.C. 2923.31 does not contain a duration requirement. Pursuant to R.C. 2923.31(E), " '[p]attern of corrupt activity' means two or more incidents of corrupt activity * * * that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event."

{¶ 20} Despite the lack of a durational requirement in the statutory definition, Groce argues there was insufficient evidence here to conclude he engaged in a pattern of corrupt activity. While R.C. 2923.32 does not contain a durational requirement, it nonetheless requires that the defendant be "associated" with an "enterprise." R.C. 2923.32(A)(1); *State v. Sparks*, 12th Dist. No. CA2013-02-010, 2014-Ohio-1130, ¶ 19, citing *State v. Campbell*, 5th Dist. No. 07-CA-A-08-0041, 2008-Ohio-2143, ¶ 23. As Groce notes, the Supreme Court of Ohio has emphasized that "merely committing successive or related crimes is not sufficient to" prove there was a pattern of corrupt activity. *State v. Schlosser*, 79 Ohio St.3d 329, 333 (1997). Additionally, "[b]oth the federal and Ohio RICO statutes require an 'enterprise.' " *Id.* Pursuant to R.C. 2923.31(C), " '[e]nterprise' includes any individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity."

{¶ 21} In *Boyle v. United States*, 556 U.S. 938 (2009), the United States Supreme Court set forth a test for determining when there is an association-in-fact enterprise. Appellate courts of this state have concluded the *Boyle* test applies to the definition of enterprise utilized in R.C. 2923.31(C). *See State v. Dodson*, 12th Dist. No. CA2010-08-191, 2011-Ohio-6222, ¶ 20; *State v. Yavorcik*, 8th Dist. No. 104465, 2018-Ohio-1824, ¶ 80; *State v. Christian*, 2d Dist. No. 25256, 2016-Ohio-516, ¶ 26; *State v. Kozic*, 7th Dist. No. 11 MA 135, 2014-Ohio-3807, ¶ 105-07; *State v. Birdsong*, 11th Dist. No. 2013-L-003, 2014-

Ohio-1353, ¶ 46.  Under the *Boyle* test, "an association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."  *Boyle* at 946.  Thus, we agree with Groce that longevity is among the factors to be considered in determining whether there is sufficient evidence of a pattern of corrupt activity.

{¶ 22} The state argues that although longevity may be a proper consideration in determining whether a defendant was part of an enterprise, the "longevity" itself need last only long enough to permit the members of the enterprise to pursue the enterprise's purpose.  In other words, the state submits that there is nothing prohibiting the "longevity" of an enterprise to occur over a single day.  However, the Supreme Court of Ohio has stated that a pattern of corrupt activity under R.C. 2923.32(A)(1) " 'must include both a relationship and *continuous activity*, as well as proof of the existence of an enterprise.' " (Emphasis added.) *State v. Miranda*, 138 Ohio St.3d 184, 2014-Ohio-451, ¶ 13, quoting *State v. Dudas*, 11th Dist. No. 2008-L-109, 2009-Ohio-1001, ¶ 46.  The use of the word "continuous" seems to contemplate that the activity occurs over some not insignificant period of time.

{¶ 23} Though the state is correct that the pertinent statutes and case law do not define "longevity" in terms of finite, quantifiable amounts of time, the framework of the *Boyle* test is instructive in that the requirement of longevity relates back to the requirement of the enterprise's purpose and the relationships of the enterprise's associates.  Sufficient longevity is required to determine whether there is a common purpose and whether the associates have relationships in furtherance of that purpose.  This court has not had occasion to determine what length of time is sufficient to demonstrate longevity under the *Boyle* test, but other Ohio appellate districts who have considered the matter have approved longevity of at least a month or situations in which predicate offenses occur on different dates at different locations.  *See State v. Montoya*, 12th Dist. No. CA2012-02-015, 2013-Ohio-3312, ¶ 55 ("the transactions transpired over the course of a month, indicating some longevity"); *State v. Sultaana*, 8th Dist. No. 101492, 2016-Ohio-199, ¶ 30 ("the fact that these transactions occurred on different dates and locations demonstrates the longevity of the enterprise"); *State v. Kozic*, 7th Dist. No. 11 MA 160, 2014-Ohio-3788, ¶ 64 ("the

burglaries occurred over the span of months," indicating sufficient longevity under the *Boyle* test).

{¶ 24} Here, all of the predicate offenses occurred on the same day in the same location. Moreover, the state presented no evidence that the relationships of these men extended beyond a single day. The cocaine purchased by the confidential informant as part of the controlled buys during Detective Gauthney's investigation was not part of the indictment, and the state does not argue those controlled buys are attributable to Groce. While the surveillance footage obtained from the house clearly shows Groce and his codefendants working together on March 29, 2016, there is no other evidence in the record demonstrating that the codefendants worked together *in furtherance of a common purpose* for any length of time preceding their arrest. *See H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 241-43 (1989) (noting "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not" show *continuous* racketeering activity, noting the goal of the RICO laws was to combat "longterm criminal conduct," and stating the predicate offenses need to be attributable to the defendant "operating as part of a long-term association that exists for criminal purposes").

{¶ 25} Additionally, turning back to the definition of "pattern of corrupt activity" in R.C. 2923.31(E), the revised code specifically requires that the two or more predicate incidents of corrupt activity "are not isolated." Because the state limited its presentation of evidence to what was captured on surveillance video on March 29, 2016, the state did not put forth sufficient evidence that these predicate offenses were not isolated. For these reasons, we conclude the evidence here was insufficient to satisfy both the longevity prong of the *Boyle* test and the statutory definition of pattern of corrupt activity.

{¶ 26} This conclusion should not be construed to suggest that the predicate offenses underlying a charge of engaging in a pattern of corrupt activity can *never* occur on the same day, as different facts or a more complete exploration of the relationships of the associates of an enterprise may compel a different conclusion in a different case. Had the state presented additional evidence in furtherance of the relationship among the codefendants and how that relationship facilitated a common purpose, including, but not limited to, evidence tending to establish that Groce or his codefendants had previously spent time together in the house, that any of them had an ownership or tenancy interest in

the house, or that any of them had worked together on another day, we might be compelled to reach a different conclusion. Instead, we hold that on these specific facts, where the state put forth no evidence that these men worked together beyond the single day of the surveillance video, there is insufficient evidence for a trier of fact to conclude beyond a reasonable doubt that Groce engaged in a pattern of corrupt activity as that term is defined through the statute and relevant case law.

## B. Fifth-Degree Felony Trafficking in Cocaine

{¶ 27} Groce next argues there was insufficient evidence to support his convictions for four counts of fifth-degree felony trafficking in cocaine, correlating to Counts 5, 6, 7, and 12 of the indictment. R.C. 2925.03(A)(1) provides that "[n]o person shall * * * [s]ell or offer to sell a controlled substance or a controlled substance analog."

{¶ 28} Groce's convictions for fifth-degree felony trafficking in cocaine relate to surveillance video clips in which he appears to make a drug transaction to four separate buyers. On appeal, Groce argues the state did not produce sufficient evidence that the substance sold in those video clips was, in fact, cocaine. Groce asserts that because the state did not put forth laboratory or expert opinion that the substance in those video clips was cocaine, the state did not meet its burden.

{¶ 29} Because the substance sold during those transactions was not recovered by police, the state acknowledges that its case as it relates to these two counts is based on circumstantial evidence. "Circumstantial evidence is the 'proof of facts by direct evidence from which the trier of fact may infer or derive by reasoning other facts in accordance with the common experience of mankind.' " (Internal quotations omitted.) *State v. Robinson*, 10th Dist. No. 17AP-5, 2018-Ohio-1809, ¶ 20, quoting *State v. Griesheimer*, 10th Dist. No. 05AP-1039, 2007-Ohio-837, ¶ 26. Circumstantial evidence has the same probative value as direct evidence. *Robinson* at ¶ 20; *State v. Teitelbaum*, 10th Dist. No. 14AP-310, 2016-Ohio-3524, ¶ 120. "[C]ircumstantial evidence is sufficient to sustain a conviction if that evidence would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Heinish*, 50 Ohio St.3d 231, 238 (1990). As relevant here, circumstantial evidence can be used to prove the identity of the controlled substance at issue in a charge of trafficking in drugs under R.C. 2925.03. *Robinson* at ¶ 19-32.

{¶ 30} The video footage related to these four counts show Groce engaging in transactions with small baggies. Police found similar small baggies of crack cocaine that weighed less than 5 grams. Additionally, police recovered scales with cocaine residue, weights, baggies, and a measuring cup with cocaine residue from the house, and the video footage showed the men counting stacks of cash, all of which is circumstantial evidence of drug trafficking. *See State v. Phillips*, 10th Dist. No. 14AP-362, 2014-Ohio-4947, ¶ 19. The surveillance footage also showed the buyers hiding their purchases, further circumstantial evidence that the transaction was not lawful. Based on the entire record, we conclude there was sufficient evidence that a trier of fact could conclude beyond a reasonable doubt that the substance Groce sold related to the four fifth-degree felony charges of trafficking in drugs was, in fact, cocaine.

### C. Illegal Manufacture of Drugs

{¶ 31} Groce next argues there was insufficient evidence to sustain his conviction for the illegal manufacture of drugs, correlating to Count 4 of the indictment. R.C. 2925.04 provides "[n]o person shall * * * knowingly manufacture or otherwise engage in any part of the production of a controlled substance." Similar to his argument related to the fifth-degree felony convictions of trafficking in cocaine, Groce argues the state did not provide evidence that the substance he appeared to be "cooking" on the surveillance footage was, indeed, crack cocaine. Groce asserts the state's failure to provide laboratory or expert identification of the substance in the video footage he appears to be cooking prohibits his conviction for the illegal manufacture of drugs.

{¶ 32} Again, the state presented sufficient circumstantial evidence that the product Groce was seen "cooking" in the surveillance footage was, in fact, crack cocaine. Both Detective Gauthney and Malloure testified to the process of creating crack cocaine from powdered cocaine by mixing it with baking soda and heating the mixture. The scales and measuring cups recovered from the house had cocaine residue on them, and police recovered cocaine from the kitchen cabinet during the search warrant raid. We conclude this is sufficient evidence for a reasonable trier of fact to infer, beyond a reasonable doubt, that the substance Groce was "cooking" was crack cocaine. Thus, there was sufficient evidence to support Groce's conviction for the illegal manufacture of drugs.

### D. First-Degree Felony Trafficking in Cocaine and Possession of Cocaine

{¶ 33} Additionally, Groce argues there was insufficient evidence to sustain his convictions of first-degree felony trafficking in cocaine under R.C. 2925.03 and first-degree felony possession of cocaine under R.C. 2925.11, correlating to Counts 2 and 3 of the indictment, respectively. Both of these charges relate to the 28.9 grams of cocaine police recovered from the house during the execution of the search warrant.

{¶ 34} Possession is an explicit element of the offense of possession of cocaine under R.C. 2925.11, which requires the offender must "knowingly obtain, possess, or use a controlled substance." To be guilty of first-degree felony trafficking in cocaine, the offender must knowingly "[p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person." Thus, possession is an implicit element of trafficking in cocaine under R.C. 2925.03(A)(2). *State v. Cabrales*, 118 Ohio St.3d 54, 2008-Ohio-1625, ¶ 30 ("[i]n order to ship a controlled substance, deliver it, distribute it, or prepare it for shipping, etc., the offender must 'hav[e] control over' it," citing the definition of "possession" contained in R.C. 2925.01(K)). Here, Groce argues there was insufficient evidence that he possessed the 28.9 grams of cocaine that forms the basis of these two charges.

{¶ 35} Groce argues he could not be convicted of these two counts because he was not present at the house at the time of the search. However, "Ohio courts have rejected the proposition that 'the underlying drug possession offense * * * occurs only at the moment the police execute the search warrant.' " *State v. Walker*, 10th Dist. No. 14AP-905, 2016-Ohio-3185, ¶ 85, quoting *State v. Benton*, 8th Dist. No. 82810, 2004-Ohio-3116, ¶ 29. Moreover, possession of drugs may be actual or constructive. *State v. Pilgrim*, 184 Ohio App.3d 675, 2009-Ohio-5357, ¶ 27 (10th Dist.), citing *State v. Saunders*, 10th Dist. No. 06AP-1234, 2007-Ohio-4450, ¶ 10. Actual possession occurs when a person has an item within his immediate physical control. *Id.*, citing *Saunders* at ¶ 10. Constructive possession, on the other hand, occurs "when a person knowingly exercises dominion and control over an object, even though the object may not be within the person's immediate

physical possession." *Pilgrim* at ¶ 27, citing *State v. Hankerson*, 70 Ohio St.2d 87 (1982), syllabus.    Circumstantial evidence, on its own, is sufficient to support a finding of constructive possession. *Pilgrim* at ¶ 27.

{¶ 36} The surveillance footage here showed Groce and his codefendants were the only ones handling the cocaine.  Police found cocaine in the kitchen cabinet and in a drink box, the same locations the surveillance showed the men storing their cocaine throughout the course of the day.  As Detective Gauthney testified, had anyone else been in the kitchen after Groce and his codefendants left the house, the surveillance system would have captured that activity.

{¶ 37} Moreover, to the extent Groce argues the smaller baggies of cocaine seized during the raid are not attributable to him because he is not seen handling these baggies on video, we note that Groce and his codefendants were each charged for the principal offense and as a complicitor.  R.C. 2923.03(F) provides that "[a] charge of complicity may be stated in terms of this section, or in terms of the principal offense."  Thus, we conclude there was sufficient evidence for the trier of fact to conclude Groce constructively possessed the cocaine for the offenses of first-degree felony trafficking and first-degree felony possession.

{¶ 38} Additionally, there was sufficient evidence that Groce had the requisite intent to support his conviction for trafficking in cocaine.  The surveillance footage captured Groce and his codefendants trafficking small rocks of crack cocaine, so the jury could reasonably infer that Groce and his codefendants had the same intent for the bulk amount of cocaine police recovered from the house, including the 24.423 grams of cocaine found in the kitchen cupboard that had not yet been cut up and individually packaged.  Accordingly, we conclude sufficient evidence supports Groce's convictions for trafficking in cocaine and possession in cocaine under Counts 2 and 3 of the indictment.

### E.  Firearm Specifications

{¶ 39} Finally under this assignment of error, Groce argues the evidence was insufficient to support the firearm specifications attached to each of his eight convictions.

{¶ 40} Pursuant to R.C. 2941.141, a court must impose a one-year mandatory prison term on an offender where the indictment "specifies that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense."  The firearm specifications attached to Counts 1, 2, 3, and 4 alleged that Groce and/or his

indicted codefendants had a firearm on or about his person or under his control at the time of the offense, while the firearm specifications attached to Counts 5, 6, 7, and 12 alleged Groce had a firearm on his person or under his control during the commission of the offenses. The parties stipulated that the three guns seized from the house during the search were operable. On appeal, Groce argues the evidence was nonetheless insufficient to show that any of the firearms were under his control during the commission of the offenses, or, as it relates to Counts 1, 2, 3, and 4, under the control of any of his indicted codefendants and thus attributable to him under a complicity theory.

{¶ 41} As this court has noted, " '[w]hen a weapon is not found on the defendant's person, but instead found in another room, the weapon may be under a defendant's control for the purposes of R.C. 2941.141.' " *Walker* at ¶ 64, quoting *State v. Harry*, 12th Dist. No. CA2008-01-013, 2008-Ohio-6380, ¶ 53. Under these circumstances, where the firearm is not found within the defendant's immediate physical possession, the issue becomes "whether appellant had the ability to exercise dominion and control over the items 'sufficient to show constructive possession.' " *Walker* at ¶ 71, quoting *State v. Tyler*, 8th Dist. No. 99402, 2013-Ohio-5242, ¶ 17.

{¶ 42} Here, construing the facts most strongly in favor of the prosecution, as we are required to do in reviewing a sufficiency challenge, the state presented evidence from which a trier of fact could infer that he had dominion and control over the firearms found in the house during the raid. Although Groce points out that the state conceded that Groce did not own the house or appear as a tenant on any lease, the video evidence established he had sufficient dominion and control over the house while he was engaging in drug transactions. The video evidence also shows Groce interacting with and working with Johnson, who was detained when police searched the house and who had a firearm on his person. Although there is no video showing Groce, himself, physically possessing a gun, there is video evidence of a man carrying a gun when he answers the door for a drug transaction. From all of this circumstantial evidence, a reasonable trier of fact could conclude beyond a reasonable doubt that Groce had sufficient dominion and control over the firearms in the house and constructively possessed them during the commission of these offenses.

{¶ 43} Thus, having found sufficient evidence supports Groce's convictions for trafficking in cocaine, possession of cocaine, and illegal manufacture of drugs, as well as the

attendant firearm specifications for those convictions, and also having found insufficient evidence to support Groce's conviction for engaging in a pattern of corrupt activity and insufficient evidence to support the attendant firearm specification for that conviction, we sustain in part and overrule in part Groce's first assignment of error.

## IV.  Second Assignment of Error – Narration of the Surveillance Video

{¶ 44} In his second assignment of error, Groce argues the trial court erred in allowing Detective Gauthney to provide narrative testimony of the surveillance footage.

{¶ 45} Generally, the admission or exclusion of evidence lies in the sound discretion of the trial court.  *State v. Darazim*, 10th Dist. No. 14AP-203, 2014-Ohio-5304, ¶ 33, citing *State v. Bartolomeo*, 10th Dist. No. 08AP-969, 2009-Ohio-3086, ¶ 24.  An abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 46} Pursuant to Evid.R. 602, "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."  Groce argues Detective Gauthney lacked the requisite personal knowledge of the activities depicted in the surveillance video in order to permit him to render lay opinion testimony about what was happening.  As the state notes, however, Detective Gauthney was the lead investigator in this matter, he seized the surveillance system from the home, reviewed all the images as part of his investigation, and, through his testimony, identified the individuals on the video and explained how the images were reviewed for suspected criminal activity.  Thus, although Detective Gauthney did not personally make or appear in the surveillance video, he had personal knowledge of the contents of the video as it related to his investigation.

{¶ 47} Groce additionally argues that Detective Gauthney offered impermissible lay opinion testimony about the activities depicted in the video.  Evid.R. 701 permits a lay witness to offer an opinion or inference that is "(1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."  Here, Detective Gauthney limited his testimony to his opinions, based on his experience in law enforcement and investigating narcotics cases, of what he thought the video depicted in terms of drug trafficking and manufacture.

{¶ 48} Additionally, the trial court provided a limiting instruction to the jury as follows:

> As the witness speaks to and answers questions about this video, folks, that the State is introducing, he may or may not refer to the illicit substance of cocaine. The idea that this witness may refer to a substance as cocaine is actually an ultimate issue that you as fact finders must determine in this case whether the substance is indeed cocaine because it's an essential element of some of the offenses charged in the indictment.
>
> When this witness, if or when he refers to a substance as cocaine or crack cocaine, he is - - I'm giving you a blanket instruction now that every time he refers to that it is his belief that that substance is cocaine or crack cocaine, but you may ultimately decide whether or not you believe it is. Okay?

(Tr. Vol. III at 594.) We presume a jury follows the court's instructions. *State v. Morock*, 10th Dist. No. 14AP-559, 2015-Ohio-3152, ¶ 18, citing *State v. Raglin*, 83 Ohio St.3d 253, 264 (1998).

{¶ 49} The jury was able to view the video during the trial and reach its own conclusions about the activities it saw depicted therein. Furthermore, laboratory testing of the items seized from the house demonstrated cocaine was present in the house. Because the trial court appropriately limited the weight of Detective Gauthney's opinion testimony, and in light of the other evidence presented at trial, we find no abuse of discretion in the trial court allowing Detective Gauthney to provide testimony related to the events depicted in the video. Accordingly, we overrule Groce's second assignment of error.

## V. Third Assignment of Error – Evidentiary Rulings

{¶ 50} In his third assignment of error, Groce argues the trial court erred in certain evidentiary rulings. More specifically, Groce asserts the trial court erred in admitting photographs of Brandon's tattoos and Detective Gauthney's testimony about witnesses' hypothetical fears about cooperating with law enforcement.

{¶ 51} As we stated in our analysis of Groce's second assignment of error, we review the trial court's evidentiary rulings for an abuse of discretion. " 'A trial court has broad discretion over the admission or exclusion of evidence, and a reviewing court generally will not reverse an evidentiary ruling absent an abuse of discretion that materially prejudices

the affected party.' " *State v. Hughes*, 10th Dist. No. 14AP-360, 2015-Ohio-151, ¶ 41, quoting *Darazim* at ¶ 16.

{¶ 52} At issue under this assignment of error are a photograph of Brandon's tattoo that read "Death B4 Dishonor, Stop Snitchin" and Detective Gauthney's testimony regarding the possible significance of that tattoo. (State's Ex. C-131.) Detective Gauthney testified that people who utilize drug houses are "scared to come to court * * * and point the finger at somebody that's accused of a crime and they feel as though they're by themselves out in the street." (Tr. Vol. II at 506.) Groce argues this photograph and the related testimony were not relevant and unfairly prejudicial. Evid.R. 403(A) provides that "[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

{¶ 53} Even if we were to agree with Groce that the photographs of the tattoo and related testimony should have been excluded under Evid.R. 403(A), we find any error from the admission of this evidence to be harmless. Where there is no reasonable possibility the challenged evidence contributed to a conviction, the error is harmless and thus does not constitute grounds for reversal. *State v. Haines*, 112 Ohio St.3d 393, 2006-Ohio-6711, ¶ 62. Even if the testimony related to the tattoo was not relevant, there was ample other evidence supporting Groce's convictions. Groce is seen on video making drug transactions, manufacturing cocaine, and preparing the product for sale. Thus, Groce cannot demonstrate material prejudice from the admission of the photographs of the tattoo and related testimony, and any error in the admission of this evidence is harmless.

{¶ 54} Thus, we overrule Groce's third assignment of error.

## VI. Fourth Assignment of Error – Prosecutor's Closing Remarks

{¶ 55} In his fourth assignment of error, Groce argues the prosecutor made several remarks during the state's closing argument that deprived Groce of his right to a fair trial. More specifically, Groce challenges as improper and prejudicial the prosecutor's statements (1) that represented the surveillance video equipment to be motion activated; (2) expanded the scope of the engaging in a pattern of corrupt activity charge to events beyond the predicate offenses listed in the indictment; and (3) urged the jury to consider the photographs of Brandon's tattoo for an impermissible purpose.

{¶ 56} Courts afford prosecutors wide latitude in closing arguments, and prosecutors may draw reasonable inferences from the evidence at trial, commenting on those inferences during closing argument. *State v. Hunt*, 10th Dist. No. 12AP-1037, 2013-Ohio-5326, ¶ 18. The test for prosecutorial misconduct in closing arguments "is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant." *State v. Smith*, 14 Ohio St.3d 13, 14 (1984), citing *United States v. Dorr*, 636 F.2d 117 (5th Cir.1981). " '[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor.' " *State v. Wilkerson*, 10th Dist. No. 01AP-1127, 2002-Ohio-5416, ¶ 38, quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982). Thus, prosecutorial misconduct is not grounds for reversal unless the defendant has been denied a fair trial. *State v. Maurer*, 15 Ohio St.3d 239, 266 (1984).

## A. Whether the Surveillance System is Motion Activated

{¶ 57} The first instance of alleged prosecutorial misconduct that Groce challenges occurred after his defense counsel argued in his closing that because there was a several hour gap between the last video clip of Brandon and the forced entry of the police, it is possible that someone else was in the kitchen during that time frame and that the large amount of cocaine seized by police during the raid could have belonged to someone else who left it there. The prosecutor then responded to this argument in the state's closing argument by stating "Detective Gauthney testified that these cameras are motion activated. They - - they come on when people move around." (Tr. Vol. IV at 982.) Defense counsel objected to this statement, arguing Detective Gauthney did not testify that the cameras were motion activated. The trial court then provided an instruction to the jury to remember that "closing remarks of counsel are not evidence. They're what the attorneys believe the evidence showed." (Tr. Vol. IV at 983.)

{¶ 58} On appeal, Groce maintains that this statement by the prosecutor was an unfair misrepresentation of the evidence. A review of the record reveals that on cross-examination, defense counsel attempted to get Detective Gauthney to agree that he would have no way to be sure that the cocaine that was recovered from the kitchen cabinet during the police raid was the same item that the video showed Groce place in the cabinet during one of the video clips because of the three-hour time difference between the last clip of the

codefendants and when the police entered the house. The following exchange then occurred:

> Q. But you have no way of knowing whether or not that was changed or something happened to that during the 3 hours where we don't have video, correct?
>
> A. Well, if there was video inside that kitchen, it would have picked it up because there's a reason why those cameras were inside that kitchen, to catch anybody possibly going into -- [.]

(Tr. Vol. III at 734.)

{¶ 59} The state argues that the prosecutor's statement that the cameras were motion activated was a fair characterization of Detective Gauthney's testimony on this matter. Having reviewed the record, we agree. Even if the cameras were not, in fact, motion activated, the point of this testimony from Detective Gauthney is that had any other individual approached the kitchen cabinet during that three hour period, there would have been video footage of that occurrence. Whether we construe Detective Gauthney's testimony as indicating that the cameras were motion activated or as indicating that the cameras were functional during that time but that no one was in the kitchen during that three-hour gap, the main thrust of the testimony remains the same. Defense counsel was attempting to break the chain of control of the cocaine seized from the kitchen cabinet and Detective Gauthney's testimony refuted that attempt.

{¶ 60} Even if the prosecutor was technically incorrect about whether the cameras were motion activated, the point he was making was consistent with the testimony. Moreover, defense counsel objected to this statement at trial and the trial court instructed the jurors to rely on their own memories of what the evidence showed. Thus, Groce does not demonstrate that this characterization of the evidence during closing arguments prejudiced him or deprived him of a fair trial.

### B. The Existence of the Drug House Prior to March 29, 2016

{¶ 61} Groce next argues the state deprived him of a fair trial when, during its rebuttal argument, the prosecutor commented that as of March 29, 2016, the drug house had all of the items it would need to engage in a pattern of corrupt activity and that it was "an ongoing place of business." (Tr. Vol. IV at 966.) Defense counsel objected that the state

was attempting to expand the predicate offenses to the charge of engaging in a pattern of corrupt activity beyond the one day contained in the indictment. This argument relates solely to the fairness of the trial as it relates to Groce's conviction for engaging in a pattern of corrupt activity. Having determined in our resolution of Groce's first assignment of error that there was insufficient evidence to support his conviction of engaging in a pattern of corrupt activity, this argument is moot and we need not address it.

### C. Arguments Related to Tattoo Photographs

{¶ 62} Lastly under this assignment of error, Groce argues the state deprived him of a fair trial when the prosecutor, in commenting on the lack of civilian witnesses in the case, argued that Brandon's "Death B4 Dishonor, Stop Snitchin" tattoo helps explain why no civilian witnesses would be willing to come forward or cooperate with law enforcement. Groce argues these comments were highly prejudicial and were intended only to urge the jury to draw an improper inference from Groce's association with Brandon about his possible guilt.

{¶ 63} As we have noted throughout our analysis, however, the evidence of these crimes was based entirely on the surveillance video confiscated from the house. Even without civilian witnesses to corroborate the events in the video, there was ample evidence of Groce's guilt. Thus, the prosecutor's remarks about Brandon's tattoos and the lack of civilian witnesses could not have operated to deprive Groce of a fair trial.

{¶ 64} Because Groce does not show that the state deprived him of a fair trial when the prosecutor commented on the motion-activated nature of the surveillance footage or when the prosecutor commented on Brandon's tattoos, and because Groce's argument about the evidence related to the engaging in a pattern of corrupt activity charge is moot, Groce's fourth assignment of error is overruled in part and moot in part.

### VII. Fifth Assignment of Error – Ineffective Assistance of Counsel

{¶ 65} In his fifth assignment of error, Groce argues he received ineffective assistance of counsel.

{¶ 66} In order to prevail on a claim of ineffective assistance of counsel, Groce must satisfy a two-prong test. First, he must demonstrate that his counsel's performance was deficient. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This first prong requires Groce to show that his counsel committed errors which were "so serious that counsel was

not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. If Groce can so demonstrate, he must then establish that he was prejudiced by the deficient performance. *Id*. To show prejudice, Groce must establish there is a reasonable probability that, but for his counsel's errors, the result of the trial would have been different. A "reasonable probability" is one sufficient to undermine confidence in the outcome of the trial. *Id*. at 694.

{¶ 67} In considering claims of ineffective assistance of counsel, courts indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 101. Groce contends his trial counsel was ineffective in (1) failing to object to the admission of the police report; (2) failing to request a continuity instruction related to the charge of engaging in a pattern of corrupt activity; and (3) failing to insist that the trial court correct the prosecutor's characterization of the surveillance system as motion activated.

### A. Failure to Object to Admission of Police Report

{¶ 68} Groce first argues his trial counsel was ineffective in failing to object to the admission of Detective Gauthney's police report as that report provided the jury with the state's theory of Groce's guilt. Groce asserts the police report contained hearsay statements and, thus, was inadmissible. *See, e.g., Amoako-Okyere v. Church of the Messiah United Methodist Church*, 10th Dist. No. 14AP-441, 2015-Ohio-3841, ¶ 50 (noting that a police report is generally hearsay unless it meets one of the exceptions in the Rules of Evidence, and that "hearsay statements contained in a police report that do not have an independent source of admissibility are inadmissible under Evid.R. 803(8)").

{¶ 69} Even if it was deficient for Groce's counsel to fail to object to the admission of the police report, error in the admission of evidence "may be considered harmless where such [evidence] is cumulative of other, properly admitted [evidence]." *State v. Fort*, 10th Dist. No. 15AP-704, 2016-Ohio-1242, ¶ 53, citing *State v. Arnold*, 10th Dist. No. 07AP-789, 2010-Ohio-5622, ¶ 8. There was ample evidence of Groce's guilt in the form of the surveillance footage; the police report was cumulative to the properly admitted evidence. Thus, Groce does not show prejudice from the admission of the police report, and thus his counsel's failure to object does not amount to ineffective assistance.

**B.  Failure to Request a Continuity Instruction**

{¶ 70} Groce's next alleged instance of ineffective assistance of counsel is his trial counsel's failure to request an instruction that the offense of engaging in a pattern of corrupt activity requires the state to prove "continuous activity." *Miranda* at ¶ 13. However, having already determined Groce's conviction for engaging in a pattern of corrupt activity is not supported by sufficient evidence, this argument is moot.

**C.  Failure to Insist that the Trial Court Correct the Prosecutor's Misstatement**

{¶ 71} Groce's final instance of alleged ineffective assistance of counsel is his trial counsel's failure to insist that the trial court provide an affirmative instruction to the jury that Detective Gauthney never testified that the surveillance system was motion activated. Trial counsel objected to the prosecutor's statement and the trial court provided a general instruction that the jury was to rely on its memory of the evidence rather than the state's characterization of it.

{¶ 72} As we noted in our resolution of Groce's fourth assignment of error, the prosecutor's statements regarding whether the surveillance system was motion activated were meant to convey the point that Detective Gauthney made about the lack of any video footage of anyone else approaching the kitchen cabinet where police found the cocaine. Had Groce's counsel insisted on an affirmative instruction that the term "motion activated" did not appear in the testimony, it would have provided the state with an opportunity to highlight further Detective Gauthney's testimony about no other individuals appearing on video during that time. Thus, Groce's counsel's decision not to insist on a more specific instruction was a matter of trial strategy and will not form the basis of a claim of ineffective assistance of counsel. *Hughes* at ¶ 58 (defense counsel's decision "not to rehash or highlight" unfavorable evidence can be a tactical decision), citing *State v. Ryan*, 10th Dist. No. 08AP-481, 2009-Ohio-3235, ¶ 77 ("[t]actical or strategic trial decisions, even if ultimately unsuccessful, will not substantiate a claim of ineffective assistance of counsel").

{¶ 73} Because Groce cannot demonstrate that his trial counsel's representation was deficient or that he suffered any prejudice from his trial counsel's representation, we reject his claim that he received the ineffective assistance of counsel. Accordingly, Groce's fifth assignment of error is overruled in part and moot in part.

**VIII.   Sixth Assignment of Error – Jury Selection**

{¶ 74}  In his sixth assignment of error, Groce argues the trial court erred in allowing the prosecution to exercise a peremptory challenge in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986).  "Under well-established principles of equal protection jurisprudence, * * * a peremptory challenge may not be used purposefully to exclude members of a cognizable racial group from jury service solely on the basis of their race."  *State v. Powers*, 92 Ohio App.3d 400, 405 (10th Dist.1993), citing *Batson* at 84.

{¶ 75}  "A court adjudicates a *Batson* claim in three steps."  *State v. Murphy*, 91 Ohio St.3d 516, 528 (2001).  "First, the opponent of the peremptory challenge must make a prima facie case of racial discrimination.  Second, if the trial court finds this requirement fulfilled, the proponent of the challenge must provide a racially neutral explanation for the challenge."  *State v. Bryan*, 101 Ohio St.3d 272, 2004-Ohio-971, ¶ 106, citing *Batson* at 96-98.   The third and final step requires the trial court to "decide based on all the circumstances, whether the opponent has proved purposeful facial discrimination." *Bryan* at ¶ 106, citing *Batson* at 98.

{¶ 76}  "The prosecution's race-neutral explanation need not rise to the level of a challenge for cause."  *State v. Jennings*, 10th Dist. No. 09AP-70, 2009-Ohio-6840, ¶ 18, citing *State v. Cook*, 65 Ohio St.3d 516, 519 (1992), citing *Batson* at 96-98.  "Instead, the issue in the second step is 'the facial validity of the prosecution's explanation.  Unless a discriminatory intent is inherent in the prosecution's explanation, the reason offered will be deemed race neutral.' "  *Jennings* at ¶ 18, quoting *Hernandez v. New York*, 500 U.S. 352, 360 (1991) (plurality opinion).  On appeal, we will not reverse a trial court's ruling that finds no discriminatory intent unless the ruling is clearly erroneous.  *Jennings* at ¶ 18, citing *Bryan* at ¶ 106, citing *State v. Hernandez*, 63 Ohio St.3d 577, 583 (1992).

{¶ 77} Walker's counsel made the *Batson* challenge to potential juror number 7, stating "[t]hat's now two African-Americans that have been excused in this matter by the State and * * * I don't have anything from my notes that would indicate reasons why [potential juror number 7] should be excused."  (Tr. Vol. II at 339.)  The state responded that the potential juror's father had a federal conviction and, although the potential juror had disclosed that information in her juror questionnaire, she wanted to talk to the court and counsel to know whether that would have any impact on her chances to be on the jury.

The trial court found there was no discriminatory intent in the state's peremptory strike of the potential juror. Groce's counsel then joined in the challenge to preserve the issue for appeal.

{¶ 78} We conclude there is no clear error in the trial court's determination. The state's reason for exercising a peremptory challenge was that her father had a federal criminal conviction. The criminal history of a relative of a potential juror is a race-neutral explanation for a peremptory strike. *State v. Santiago*, 10th Dist. No. 02AP-1094, 2003-Ohio-2877, ¶ 10 ("[r]emoving a juror based on the past criminal history of him or her, or his or her family member, is a valid, race-neutral reason for raising a peremptory challenge"); *see also State v. Powell*, 9th Dist. No. 28170, 2017-Ohio-5629, ¶ 35; *State v. Lacey*, 7th Dist. No. 10 MA 122, 2012-Ohio-1685, ¶ 127. The trial court was able to consider the validity of the state's response and determined there was no discriminatory intent. Accordingly, the trial court did not clearly err when it determined the state had credible, race-neutral reasons for exercising its peremptory strike. We overrule Groce's sixth assignment of error.

## IX. Seventh Assignment of Error – Merger

{¶ 79} In his seventh and final assignment of error, Groce argues the trial court erred in failing to merge his convictions for purposes of sentencing. In imposing Groce's sentence, the trial court merged his convictions under Counts 2 and 3 of the indictment, first-degree felony trafficking in cocaine and first-degree felony possession of cocaine. On appeal, Groce asserts the trial court additionally should have (1) merged his four convictions for fifth-degree felony trafficking in cocaine and their attendant firearm specifications under Counts 5, 6, 7, and 12 with his conviction for first-degree felony trafficking in Count 2; (2) merged his conviction for fifth-degree felony trafficking under Count 12 and the attendant firearm specification with any of the fifth-degree felony trafficking convictions under Counts 5, 6, and 7; and (3) not imposed a separate one-year prison term for the firearm specification attached to his conviction for engaging in a pattern of corrupt activity under Count 1 of the indictment.

{¶ 80} In reviewing a trial court's determination of whether a defendant's offenses should merge pursuant to the multiple counts statute, an appellate court reviews the trial court's R.C. 2941.25 determination de novo. *State v. S.S.*, 10th Dist. No. 13AP-1060, 2014-

Ohio-5352, ¶ 28, citing *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, ¶ 1. " 'Appellate courts apply the law to the facts of individual cases to make a legal determination as to whether R.C. 2941.25 allows multiple convictions. That facts are involved in the analysis does not make the issue a question of fact deserving of deference to a trial court.' " *S.S.* at ¶ 28, quoting *Williams* at ¶ 25.

{¶ 81} R.C. 2941.25 provides:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

## A. Merger of Fifth-Degree Trafficking with First-Degree Trafficking

{¶ 82} Groce argues that his four fifth-degree felony convictions for trafficking in cocaine should have merged for purposes of sentencing with his first-degree felony conviction for trafficking in cocaine. "When the defendant's conduct constitutes a single offense, the defendant may be convicted and punished only for that offense. When the conduct supports more than one offense, however, a court must conduct an analysis of allied offenses of similar import to determine whether the offenses merge or whether the defendant may be convicted of separate offenses." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, ¶ 24.

{¶ 83} "To determine whether two offenses are allied offenses that merge into a single conviction, a court must evaluate three separate factors: the conduct, the animus, and the import." *State v. Harris*, 10th Dist. No. 15AP-683, 2016-Ohio-3424, ¶ 42, citing *Ruff* at paragraph one of the syllabus. "If any of the following is true, the offenses cannot merge and the defendant may be convicted and sentenced for multiple offenses: (1) the offenses are dissimilar in import or significance—in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation." *Ruff* at ¶ 25. Ultimately, if the harm

resulting from each offense is separate and identifiable, the offenses are of dissimilar import and do not merge. *Harris* at ¶ 42, citing *Ruff* at ¶ 25.

{¶ 84} In conducting an analysis of whether two offenses are allied offenses of similar import, the Supreme Court of Ohio directs an appellate court to look beyond the statutory elements and to consider the defendant's conduct. "A trial court and the reviewing court on appeal when considering whether there are allied offenses that merge into a single conviction under R.C. 2941.25(A) must first take into account the conduct of the defendant. In other words, how were the offenses committed?" *Ruff* at ¶ 25.

{¶ 85} Here, Groce argues the state relied on the more than 28 grams of cocaine seized from the house to support all five of his trafficking convictions and, thus, those convictions should all merge. Groce is mistaken. The cocaine seized from the house was used to support Groce's first-degree felony trafficking conviction. However, his four fifth-degree felony trafficking convictions related to four separate transactions for which the cocaine was never recovered, in amounts under 5 grams each. As we discussed in our resolution of Groce's first assignment of error, because the cocaine for those four transactions was never recovered, the jury was required to infer the quantity based on the other direct and circumstantial evidence. Thus, each of those two sales were their own offenses and were unrelated to the more than 28 grams of cocaine seized from the house, which related to his first-degree felony trafficking conviction. Accordingly, the trial court did not err in failing to merge Counts 5, 6, 7, and 12 with Count 2.

**B.  Merger of Count 12 with Counts 5, 6, and 7**

{¶ 86} Groce next argues his conviction for fifth-degree felony trafficking under Count 12 and the attendant firearm specification should merge with his convictions for fifth-degree felony trafficking under Counts 5, 6, and 7 and their attendant firearm specifications. In support of this argument, Groce asserts that state's exhibit M-2 correlates to separate video evidence to support Counts 5, 6, and 7, but also correlates Count 12 of the indictment to video clip 12, which shows Brandon, not Groce. Thus, Groce argues there is no way to be certain the jury did not convict Groce under Count 12 with the same evidence used to convict him for Counts 5, 6, and 7.

{¶ 87} As the state notes, however, state's exhibit 12, an aid prepared for trial, additionally linked Count 12 to video clip 19. In clip 19, Groce is seen working at the

microwave, preparing and weighing crack, and accepting cash for a sale. Thus, Groce is mistaken that there is not separate video evidence establishing separate and distinct transactions related to each of Counts 5, 6, 7, and 12. Thus, there was no error in the trial court's decision not to merge these convictions or their attendant firearm specifications for purposes of sentencing.

### C. Firearm Specification Attached to Engaging in a Pattern of Corrupt Activity

{¶ 88} Finally, Groce argues the trial court erred in failing to merge the firearm specification attached to his conviction under Count 1 with the firearm specification attached to either Count 2, 3, or 4. However, having determined in our resolution of Groce's first assignment of error that there was insufficient evidence to sustain his conviction for engaging in a pattern of corrupt activity under Count 1, this argument is moot.

{¶ 89} For these reasons, Groce's seventh and final assignment of error is overruled in part and moot in part.

## X. Disposition

{¶ 90} Based on the foregoing reasons, there was insufficient evidence to support Groce's conviction for engaging in a pattern of corrupt activity and the attendant firearm specification; as such, Groce's remaining arguments relating to his conviction for engaging in a pattern of corrupt activity are moot. However, there was sufficient evidence to support Groce's convictions for trafficking in cocaine, possession of cocaine, and illegal manufacture of drugs, and the attendant firearm specifications for these convictions. The trial court did not abuse its discretion in making its evidentiary rulings, the prosecutor's statements in closing arguments did not deprive Groce of a fair trial, Groce did not receive the ineffective assistance of counsel, the trial court did not err in ruling on Groce's *Batson* challenge, and the trial court did not err in determining which of Groce's convictions merged with one another. Having sustained in part and overruled in part Groce's first assignment of error and having overruled the portions of Groce's second, third, fourth, fifth, sixth, and seventh assignments of error that are not moot, we affirm in part and reverse in

part the judgment of the Franklin County Court of Common Pleas.  We remand this matter to that court for further proceedings consistent with this decision.

*Judgment affirmed in part and reversed in part;*
*cause remanded.*

BROWN and DORRIAN, JJ., concur.

---