[Cite as *State v. Walker*, 2021-Ohio-4321.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 17AP-588 |
| | | (C.P.C. No. 16CR-3447) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| William L. Walker, Jr., | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on December 9, 2021

**On brief:** [*G. Gary Tyack*], Prosecuting Attorney, and *Kimberly M. Bond*, for appellee.

**On brief:** *Blake Law Firm Co., LLC*, and *Dustin M. Blake*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} This case is before the court on remand from the Supreme Court of Ohio pursuant to *State v. Dent*, 163 Ohio St.3d 390, 2020-Ohio-6670. The Supreme Court reversed in part our judgment in *State v. Walker*, 10th Dist. No. 17AP-588, 2019-Ohio-1458, as it related to our conclusion regarding the sufficiency of the evidence on the conviction of engaging in a pattern of corrupt activity and remanded the case to this court for further proceedings to address the issues this court deemed moot in *Walker*. On consideration of the remaining arguments, we affirm.

## I. Facts and Procedural History

{¶ 2} In *Walker*, defendant-appellant, William L. Walker, Jr., appealed from a judgment entry of the Franklin County Court of Common Pleas finding him guilty, pursuant

to jury verdict, of one count of engaging in a pattern of corrupt activity, one count of possession of cocaine, one count of illegal manufacture of drugs, and three counts of trafficking in cocaine. We concluded in *Walker* that there was insufficient evidence to support Walker's conviction of engaging in a pattern of corrupt activity, rendering moot several additional arguments Walker made related to his conviction of engaging in a pattern of corrupt activity. *Walker* at ¶ 92. We additionally found, however, that there was sufficient evidence to support Walker's convictions of possession of cocaine, illegal manufacture of drugs, and trafficking in cocaine, and we overruled Walker's assignments of error challenging evidentiary rulings, closing arguments, ineffective assistance of counsel, a *Batson* challenge, the trial court's merger decisions, and the trial court's decision on Walker's motion to compel the identity of the confidential informant. *Id.*

{¶ 3} The Supreme Court, in a consolidated action with the appeal of one of Walker's codefendants, accepted the state's discretionary appeal on the following proposition of law: "The existence of an enterprise under R.C. 2923.31(C) is established by showing the organization is fully operational and engaging in a pattern of illicit activity. The time frame for the commission of a pattern of criminal conduct is sufficient where the evidence shows the corrupt activity is neither isolated or so closely connected to be considered a single offense. R.C. 2923.31(E)." *Dent* at ¶ 14. In the consolidated appeal, the Supreme Court set out the relevant facts and procedural history of this case as follows:

> After a joint jury trial, [Alvin C.] Dent [Jr.] and Walker were both found guilty of engaging in a pattern of corrupt activity, possessing cocaine, illegally manufacturing drugs, and trafficking in cocaine. The convictions for engaging in a pattern of corrupt activity are the focus of this consolidated appeal. A third individual, Drakkar Groce, was also convicted in the same trial. Groce's conviction is the subject of a separate but related appeal pending before this court in case No. 2019-0594.
>
> At the joint trial, Detective Lawrence Gauthney of the Columbus Police Department testified that he began observing a house on Greenway Avenue in response to citizen complaints that he had received around February 2016. As a result, he conducted two to three "spot checks" during which he observed foot traffic at the house consistent with "an up-

and-running drug house." More specifically, he observed a high volume of individuals who knocked and entered the house like visitors, but stayed only five to ten minutes before leaving. He testified that in his experience, this was activity consistent with the sale of drugs from the house.

Gauthney testified that on March 11 and 15, he conducted visual surveillance of the property for over an hour each time. Gauthney's surveillance reports were admitted into evidence, and he testified again that the activity at the house—specifically, a high volume of foot traffic in and out within a short period of time—was what he had consistently observed during each spot check. Additionally, during the March 15 surveillance, Gauthney observed Walker enter through the back door of the house but did not see him leave during the approximately one and one-half hours that Gauthney had observed the house.

On March 28, Gauthney arranged for a confidential informant to purchase what Gauthney believed to be crack cocaine from someone in the house. Following this buy, Gauthney obtained a no-knock warrant to search the house.

When the warrant was executed on March 29, neither appellees nor Groce were apprehended in the house, but three other individuals were. The police recovered items from the house, including small plastic bags containing cocaine, electronic scales containing cocaine residue, a glass measuring cup containing cocaine residue, as well as multiple firearms and ammunition located throughout the house. During the search of the house, the police also recovered video recordings from a camera that was located in the house's kitchen containing footage of appellees, Groce, and other individuals. Gauthney determined that the recorded footage covered a single date—March 29—and lasted for a period of over four hours.

From the videos, Gauthney drafted an investigative report in which he described what he observed at various portions of the videos. This report and portions of the actual videos were admitted into evidence. In addition, Gauthney testified as to what he believed the videos showed while the videos played for the jury. In summary, Gauthney testified that the camera recorded appellees and Groce conducting various activities with what Gauthney believed to be cocaine, including "cooking" it to make crack cocaine (by heating a mixture of

cocaine, baking soda, and water), weighing and bagging the drug, selling it, and exchanging large amounts of money.

More specifically, the videos show Dent handling and weighing multiple small plastic bags of a white substance believed to be crack cocaine. Dent is present while Groce "cooks" crack cocaine using a microwave. Dent also exchanges large stacks or rolls of money with others in the house, including Groce and Walker. At one point, Dent—with Groce's help—adjusts the camera in the kitchen for several minutes.

The videos show Walker handling small plastic bags of crack cocaine and exchanging large amounts of money with Dent. He also prepares crack cocaine using a measuring cup, baking soda, and the microwave. He exchanges a small bag containing what appears to be crack cocaine for money with unknown individuals. And then he goes back to bagging up crack cocaine at the kitchen table.

The videos also show Groce selling what appears to be crack cocaine to several individuals who appear to stay only a short time after he lets them into the house. He accesses kitchen cabinets in which portions of crack cocaine appear to be stored, weighs the substance and places it in smaller plastic bags. In addition to "cooking" crack cocaine, he handles large "cookie" size portions of crack cocaine and splits those larger portions into smaller-sized portions and places the smaller portions in bags. He handles money in the kitchen from others and places it in his wallet.

In addition to these activities that relate to the underlying offenses of possessing, illegally manufacturing, and trafficking cocaine, the videos also demonstrate appellees and Groce engaging in more ordinary activities in the house distinct from those other individuals in the videos. For example, appellees and Groce are in the house without jackets, in contrast to others who come into view of the camera for a short duration. Although the videos do not include audio, appellees casually chat with each other, Groce, and others. At one point, Groce appears shirtless and rolls a cigar. While appellees and Groce are in view, another individual makes what appears to be french fries using a countertop appliance. At another point, Walker makes himself a sandwich and appears to share a video on his phone with Dent and another individual. Dent makes a sandwich while handling a large roll of cash. At one point, Groce enters the kitchen with what

> appears to be a bag of food and a two-liter beverage. Walker and Dent share the beverage with Groce and others while Groce eats. While Walker works at the microwave doing what appears to be manufacturing crack cocaine, another individual attempts to hand him cash but Walker allows the individual to casually leave the money on the top of the microwave.
>
> The jury returned guilty verdicts for both appellees for engaging in a pattern of corrupt activity in addition to the other drug-related underlying offenses. The trial court sentenced Walker to an aggregate prison term of 20 years and Dent to an aggregate prison term of 22 years.
>
> Dent and Walker separately appealed to the Tenth District and argued that their convictions were not supported by sufficient evidence. In each case, the court of appeals agreed and reversed each of their convictions for engaging in a pattern of corrupt activity on the basis that there was insufficient evidence to support those convictions.

*Dent* at ¶ 2-13.

**{¶ 4}** In *Walker*, we held the evidence presented at trial "was insufficient to satisfy both the longevity prong of the *Boyle* [*v. United States*, 556 U.S. 938 (2009)] test and the statutory definition of a pattern of corrupt activity." *Walker* at ¶ 26. However, in reversing the decision of this court in *Walker*, the Supreme Court concluded in *Dent* that "[v]iewing the evidence described above in a light most favorable to the prosecution as we must, we conclude that a rational juror could have found beyond a reasonable doubt that [Walker and Dent] participated in an association-in-fact enterprise with sufficient longevity to further its purpose." *Dent* at ¶ 24. The Supreme Court further concluded "that a reasonable juror could have found beyond a reasonable doubt that [Walker and Dent] participated in incidents of illegal activity that were not isolated and established a pattern of corrupt activity." *Id.* at ¶ 26. Accordingly, the Supreme Court reversed the decision of this court in part and remanded the case to us to consider the arguments deemed moot in *Walker*. *Id.* at ¶ 27.

**{¶ 5}** This court subsequently issued a journal entry stating, pursuant to the mandate of the Supreme Court reversing the judgment of this court, this matter is hereby resubmitted to the court for consideration of the arguments deemed moot in *Walker*.

## II. Assignments of Error

{¶ 6} The assignments of error remanded to this court for consideration read as follows:

> [1.] Walker's convictions for engaging in a pattern of corrupt activity, illegal manufacture of drugs, possession of cocaine, and trafficking in cocaine, are not supported by sufficient evidence to satisfy the requirements of the due process clause of the Fourteenth Amendment to the US Constitution.
>
> [4.] Walker was denied his right to due process and a fundamentally fair jury trial under the Fifth, Sixth and Fourteenth Amendments to the US Constitution due to improper closing remarks by the prosecutor: A) falsely representing to the jury that the home security video recording equipment was motion activated, B) expanding the scope of the corrupt activity count beyond the predicate acts listed in the indictment, and C) urging the jury to consider the erroneously admitted anti-"snitch" tattoo photographs for a forbidden purpose.
>
> [5.] Walker was denied his right to the effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the US Constitution.
>
> [7.] The trial court's failure to merge Walker's RICO conviction, trafficking convictions, and manufacturing conviction for sentencing violated R.C. 2941.25 and/or R.C. 2929.14 and his rights under the double jeopardy clause of the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

Pursuant to the Supreme Court's remand, we address only the portions of these assignments of error deemed moot in *Walker*.

## III. First Assignment of Error – Sufficiency of the Evidence

{¶ 7} In his first assignment of error, Walker argues his convictions were not supported by sufficient evidence. In *Walker*, because we disposed of Walker's argument related to the sufficiency of the evidence on his conviction of engaging in a pattern of corrupt activity based on longevity of the enterprise, we did not address his additional argument under his first assignment of error that there was insufficient evidence to support

his conviction based on the monetary threshold of the underlying violations. We must now determine whether that argument is appropriate for our consideration.

{¶ 8} In *Dent*, the Supreme Court reversed our decision related to the sufficiency of the evidence of engaging in a pattern of corrupt activity and found there was sufficient evidence that Walker "participated in an association-in-fact enterprise with sufficient longevity to further its purpose." *Dent* at ¶ 24. Further, the Supreme Court concluded "a reasonable juror could have found beyond a reasonable doubt that appellees participated in incidents of illegal activity that were not isolated and established a pattern of corrupt activity." *Id.* at ¶ 26. Thus, the Supreme Court "reverse[d] the Tenth District's judgment[] in relevant part," and because "the Tenth District determined that its conclusion regarding insufficient evidence supporting the conviction mooted certain issues raised in some assignments of error," the Supreme Court "remand[ed] Walker's case to the court of appeals for further proceedings to address those remaining issues." *Id.* at ¶ 27.

{¶ 9} Looking at the specific remand instructions provided by the Supreme Court in *Dent*, we do not construe the Supreme Court's decision as permitting consideration of further arguments relating to the sufficiency of the evidence of engaging in a pattern of corrupt activity. Instead, the Supreme Court is explicit that it remanded the case for further proceedings to address "those remaining issues" deemed moot in *Walker*. As Walker's monetary threshold argument was not one of the "other issues" we specifically deemed moot in *Walker*, it was not within the scope of the Supreme Court's remand instructions in *Dent*.

{¶ 10} Moreover, even if we were to construe the Supreme Court's remand order as permitting further consideration of the sufficiency of the evidence of the engaging in a pattern of corrupt activity conviction, we nonetheless find there is sufficient evidence of the requisite monetary threshold to support Walker's conviction of engaging in a pattern of corrupt activity. Whether there is legally sufficient evidence to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Sufficiency is a test of adequacy. *Id.* The relevant inquiry for an appellate court is whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime proven beyond a reasonable

doubt.  *State v. Mahone*, 10th Dist. No. 12AP-545, 2014-Ohio-1251, ¶ 38, citing *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, ¶ 37.

{¶ 11}  Walker was convicted of one count of engaging in a pattern of corrupt activity. Pursuant to R.C. 2923.32(A)(1), Ohio's Racketeer Influenced and Corrupt Organizations ("RICO") statute, "[n]o person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity."  Under R.C. 2923.31(E), " '[p]attern of corrupt activity' means two or more incidents of corrupt activity * * * that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event."  As defined in R.C. 2923.31(I) and as relevant here, "corrupt activity" includes "engaging in, attempting to engage in, conspiring to engage in, or soliciting, coercing, or intimidating another person to engage in" conduct including "any violation * * * or any combination of violations" of the statutes proscribing the predicate offenses of possession, manufacturing, and trafficking of drugs where the "proceeds of the violation, * * * or the value of the contraband or other property illegally possessed, sold, or purchased in the violation exceeds one thousand dollars," or "when the total proceeds of the combination of violations * * * or value of the contraband or other property illegally possessed, sold, or purchased in the combination of violations exceeds one thousand dollars."  R.C. 2923.31(I)(2)(c).  *See also State v. Johnson*, 10th Dist. No. 13AP-997, 2015-Ohio-3248, ¶ 61-62.

{¶ 12} Walker argues that although the state presented sufficient evidence of the monetary threshold for one instance of corrupt activity, it did not present sufficient evidence of the  monetary threshold for a second instance of corrupt activity in order to sufficiently prove a "pattern" within the statutory meaning.  The state responds it need only provide evidence of proceeds or value exceeding the $1,000 monetary threshold, total, in order to obtain a conviction of engaging in a pattern of corrupt activity.  Thus, the parties dispute whether, in order to convict someone of engaging in a pattern of corrupt activity pursuant to R.C. 2923.31 and 2923.32, the $1,000 threshold of the proceeds or value of the corrupt activity applies to each instance of corrupt activity or whether it applies to the pattern of corrupt activity as a whole.

{¶ 13} Recently, this court considered this identical issue in a memorandum decision denying a motion for reconsideration in the case of one of Walker's codefendants. *State v. Groce*, 10th Dist. No. 18AP-51 (Dec. 7, 2021) (memorandum decision). In the *Groce* memorandum decision, we followed the reasoning of the Sixth District Court of Appeals on the same question. In *State v. Liggins*, 6th Dist. No. 16 CAS 32, 2018-Ohio-2431, the appellant argued that although the state presented evidence of a corrupt activity, the state failed to present sufficient evidence of a pattern of corrupt activity. Specifically, the appellant asserted that, based on R.C. 2923.31 and 2923.32, the proceeds of *each* corrupt activity must exceed $1,000. The state argued, however, that it need only prove that the proceeds of the *pattern* of corrupt activity exceeded $1,000. The Sixth District concluded it agreed with the appellant's interpretation. As the Sixth District summarized:

> The language of R.C. 2923.31 and R.C. 2923.32 is plain and clear. A pattern of corrupt activity requires two or more corrupt activities. R.C. 2923.31(E). In order for drug trafficking in violation of R.C. 2925.03 to constitute a corrupt activity the total proceeds of a violation of that statute or a combination of violations of that statute must exceed $1,000. R.C. 2923.31(I)(2)(c). When those definitions are read in conjunction with each other, in order for the state to establish a pattern of corrupt activity it must produce evidence of at least two corrupt activities where the proceeds of each corrupt activity exceeded $1,000. If the general assembly had intended for the pattern of corrupt activity proceeds to exceed $1,000, the "exceeds one thousand dollars" element would have been included as part of the definition of "pattern of corrupt activity," rather than as part of the definition of "corrupt activity." The General Assembly's deliberate act of defining "corrupt activity" means, at the minimum, the proceeds of "pattern of corrupt activity" must be at least $2,000.02, since the proceeds of each "corrupt activity" must at least be $1,000.01.

*Liggins* at ¶ 23.

{¶ 14} Having reviewed the case law and statutory language, we find the reasoning of the Sixth District in *Liggins* to be persuasive, just as we found in our *Groce* memorandum decision. Therefore, we conclude that, based on the plain and unambiguous language of R.C. 2923.31 and 2923.32, in order for the state to establish a pattern of corrupt activity it must produce evidence of at least two corrupt activities where the proceeds of each corrupt

activity exceeded $1,000, and thus the aggregate total of the pattern of corrupt activities must be, at minimum, $2,000.02. *Liggins* at ¶ 23; *Groce* (memorandum decision). *See also State v. Burley*, 6th Dist. No. WD-18-076, 2020-Ohio-4603, ¶ 35 (following *Liggins*, and holding that "in order for the state to establish that a 'pattern of corrupt activity' existed in this case, it must point to evidence in the record of at least two corrupt activities, where the value of each corrupt activity, i.e., the property illegally purchased, exceeds $1,000, for a total of at least $2,000.02"); *State v. Adkins*, 12th Dist. No. CA2019-03-004, 2020-Ohio-535, ¶ 31 (noting "[c]orrupt activity is defined, inter alia, as engaging in conduct constituting a violation of R.C. 2925.03 and the proceeds from one of the violations or a combination of the violations exceeds $1,000," while "[a] pattern of corrupt activity means *two or more* instances of corrupt activity, whether or not there is a prior conviction, related to the affairs of the same enterprise") (emphasis added); *State v. Pippins*, 10th Dist. No. 15AP-137, 2020-Ohio-503, ¶ 57 (noting pattern of corrupt activity requires *two or more* instances of corrupt activity); *Johnson* at ¶ 61 (pattern of corrupt activity means *two or more* incidents of corrupt activity).

{¶ 15} With that framework, we must determine whether the state presented sufficient evidence here to satisfy the monetary threshold in order to support Walker's conviction of engaging in a pattern of corrupt activity. Walker argues there was insufficient evidence here to convict him of engaging in a pattern of corrupt activity because the state did not sufficiently prove the amount of proceeds for each of the two or more instances of corrupt activity. More specifically, though Walker concedes the state was able to satisfy the monetary threshold of one instance of corrupt activity through the evidence that the amount of cocaine found in the kitchen cabinet and seized during the police raid was worth $1,400, he asserts the state did not present any evidence of a dollar amount linked to a second instance of corrupt activity.

{¶ 16} Having reviewed the record, we do not agree with Walker that the state did not present any evidence of a value or dollar amount associated with any of the other underlying offenses to satisfy the monetary threshold of a second instance of corrupt activity. Specifically, the state presented evidence that another man apprehended inside the house at the time police executed the search warrant, Taiwain Johnson, had approximately $1,200 on his person when police searched him. This amount satisfies the

monetary threshold for a second instance of corrupt activity. Though Walker asserts the money found on Johnson's person does not constitute sufficient evidence because the state did not attempt to link that money specifically to one of Walker's indicted offenses, we are mindful that in a sufficiency of the evidence review, the question is not "whether the state presented the *best* evidence" but "whether the evidence presented, *when viewed in a light most favorable to the prosecution*, would allow any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt." (Emphasis sic.) *Dent* at ¶ 16. Thus, construing the evidence in a light most favorable to the prosecution, the state presented sufficient evidence of the monetary threshold of a second instance of corrupt activity such that it could demonstrate a *pattern* of corrupt activity under R.C. 2923.31(E).

{¶ 17} Thus, because the Supreme Court's remand order in *Dent* did not permit further consideration of the sufficiency of the evidence of Walker's conviction of engaging in a pattern of corrupt activity and, even if it did, there was sufficient evidence to satisfy the monetary threshold requirement of a conviction of engaging in a pattern of corrupt activity, we overrule the remaining portion of Walker's first assignment of error.

## IV. Fourth Assignment of Error – Prosecutor's Closing Remarks

{¶ 18} In his fourth assignment of error, Walker argues the prosecutor made several remarks during the state's closing argument that deprived Walker of his right to a fair trial. More specifically, Walker challenges as improper and prejudicial the prosecutor's statements that (1) represented the surveillance video equipment to be motion activated; (2) expanded the scope of the engaging in a pattern of corrupt activity charge to events beyond the predicate offenses listed in the indictment; and (3) urged the jury to consider the photographs of the tattoo for an impermissible purpose. In *Walker*, we considered Walker's argument as it related to the first and third of these allegations, and we found the argument moot as it related to the second of these statements since it related to his conviction of engaging in a pattern of corrupt activity. As the Supreme Court's decision in *Dent* found sufficient evidence to support Walker's conviction of engaging in a pattern of corrupt activity, we now consider his argument under his fourth assignment of error related to the prosecutor's statements allegedly expanding the scope of the engaging in a pattern of corrupt activity charge.

{¶ 19} Court's afford prosecutors wide latitude in closing arguments, and prosecutors may draw reasonable inferences from the evidence at trial, commenting on those inferences during closing argument. *State v. Hunt*, 10th Dist. No. 12AP-1037, 2013-Ohio-5326, ¶ 18. The test for prosecutorial misconduct in closing arguments "is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant." *State v. Smith*, 14 Ohio St.3d 13, 14 (1984), citing *United States v. Dorr*, 636 F.2d 117 (5th Cir.1981). " '[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor.' " *State v. Wilkerson*, 10th Dist. No. 01AP-1127, 2002-Ohio-5416, ¶ 38, quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982). Thus, prosecutorial misconduct is not grounds for reversal unless the defendant has been denied a fair trial. *State v. Maurer*, 15 Ohio St.3d 239, 266 (1984).

{¶ 20} Walker argues the state deprived him of a fair trial when, during its rebuttal argument, the prosecutor commented that as of March 29, 2016, the drug house had all of the items it would need to engage in a pattern of corrupt activity and that it was "an ongoing place of business." (Tr. Vol. IV at 966.) Defense counsel objected that the state was attempting to expand the predicate offenses to the charge of engaging in a pattern of corrupt activity beyond the one day contained in the indictment. The trial court overruled the objection and allowed the prosecutor to continue. On appeal, Walker argues the prosecutor's statements were improper because the state did not indict Walker for any offenses beyond the single day of the video footage, March 29, 2016. Thus, Walker asserts that the state limited its ability to demonstrate the existence of an enterprise beyond the indicted offenses.

{¶ 21} These statements relate to the longevity of the enterprise necessary to demonstrate a pattern of corrupt activity. Though we held in *Walker* that the state did not satisfy the longevity element, the Supreme Court disagreed and held that "a rational juror could have found beyond a reasonable doubt that appellees participated in an association-in-fact enterprise with sufficient longevity to further its purpose." *Dent* at ¶ 24. The Supreme Court elaborated in *Dent*, stating:

> Evidence of longevity sufficient to further the purpose of the enterprise is demonstrated by Detective Gauthney's spot

checks and his surveillance reports from March 11 and 15, the confidential informant's purchase of drugs, and the videos obtained at the time of the search on March 29. Together, this evidence demonstrates that activity consistent with an "up-and running drug house" had been occurring since at least late February when Gauthney received the complaints that prompted further investigation. Additionally, Gauthney observed Walker at the house on March 15 using the back door without knocking and staying longer than a few minutes, which is activity that stands in contrast to the more frequent visitors Gauthney observed knocking and entering the front door of the house and staying only five to ten minutes. Even if we focused solely on March 29, the day the video evidence was recorded, appellees performed the tasks necessary to further the enterprise's purpose of selling crack cocaine out of the house. And, based on appellees' conduct and interaction in the house on March 29 that is distinguishable from the frequent yet short-term visitors observed at the house, it is reasonable to infer that their activities with the enterprise extended beyond a single day.

*Dent* at ¶ 23.

{¶ 22} Even if we were to agree with Walker that the terms of the indictment did, in fact, limit the state's ability to demonstrate the existence of an enterprise to only March 29, 2016, the Supreme Court specifically found in *Dent* that the conduct observed in the video from March 29, 2016, on its own, constituted evidence showing sufficient longevity showing a common purpose and relationships in furtherance of that purpose. *Dent* at ¶ 23. Thus, as the Supreme Court determined the video evidence, alone, constituted sufficient evidence of the enterprise, Walker cannot demonstrate that the prosecutor's statements about the conduct observed beyond March 29, 2016 prejudiced him or deprived him of a fair trial. *Hunt* at ¶ 18 ( "[a] defendant is entitled to a new trial only when a prosecutor makes improper remarks and those remarks substantially prejudice the defendant"), citing *Smith* at 14. Accordingly, we overrule the remaining portion of Walker's fourth assignment of error.

## V.  Fifth Assignment of Error – Ineffective Assistance of Counsel

{¶ 23} In his fifth assignment of error, Walker argues he received the ineffective assistance of counsel.

{¶ 24} In order to prevail on a claim of ineffective assistance of counsel, Walker must satisfy a two-prong test. First, he must demonstrate that his counsel's performance was deficient. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This first prong requires Walker to show that his counsel committed errors which were "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* If Walker can so demonstrate, he must then establish that he was prejudiced by the deficient performance. *Id.* To show prejudice, Walker must establish there is a reasonable probability that, but for his counsel's errors, the result of the trial would have been different. A "reasonable probability" is one sufficient to undermine confidence in the outcome of the trial. *Id.* at 694.

{¶ 25} In considering claims of ineffective assistance of counsel, courts review these claims with a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 101. Walker contends his trial counsel was ineffective in (1) failing to object to Detective Gauthney's identification of Walker; (2) failing to object to the admission of the police report; (3) failing to request a continuity instruction related to the charge of engaging in a pattern of corrupt activity; and (4) failing to insist that the trial court correct the prosecutor's characterization of the surveillance system as motion activated. In *Walker*, we overruled this assignment of error as it related to Walker's first, second, and fourth allegations of ineffective assistance of counsel, finding moot his argument related to the third allegation of ineffective assistance of counsel. Pursuant to the Supreme Court of Ohio's decision in *Dent*, we now address Walker's argument that his trial counsel was ineffective in failing to request a continuity instruction related to the charge of engaging in a pattern of corrupt activity.

{¶ 26} Walker argues his trial counsel was ineffective in failing to request an instruction that the offense of engaging in a pattern of corrupt activity requires the state to prove "continuous activity." Walker relies on the Supreme Court's statement that proof of a defendant's conduct or participation in an enterprise through a pattern of corrupt activity "must include both a relationship and continuous activity, as well as proof of the existence of an enterprise." (Internal quotations omitted.) *State v. Miranda*, 138 Ohio St.3d 184, 2014-Ohio-451, ¶ 13. We note, however, that continuity is not an element of R.C. 2923.32.

Additionally, this argument relates to the state's burden to prove Walker participated in the affairs of an enterprise under R.C. 2923.32(A)(1). As the Supreme Court found in *Dent* that there was sufficient evidence to sustain Walker's conviction of engaging in a pattern of corrupt activity, Walker cannot demonstrate his counsel was deficient in failing to request an additional instruction on continuity. Thus, we overrule the remaining portion of Walker's fifth assignment of error.

## VI. Seventh Assignment of Error – Merger

{¶ 27} In his seventh assignment of error, Walker argues the trial court erred in failing to merge his convictions for purposes of sentencing. In imposing Walker's sentence, the trial court merged his convictions under Counts 2 and 3 of the indictment, first-degree felony trafficking in cocaine and first-degree felony possession of cocaine. On appeal, Walker asserts the trial court additionally should have (1) merged his convictions of first-degree felony trafficking, first-degree felony possession, and illegal manufacture of drugs with his conviction of engaging in a pattern of corrupt activity, and (2) merged his two fifth-degree felony convictions for trafficking in cocaine with his first-degree felony conviction for trafficking in cocaine. In *Walker*, we considered Walker's seventh assignment of error as it related to the second of these arguments and found the trial court did not err in imposing the sentence on those counts. The sole remaining issue under this assignment of error on remand is whether the trial court erred in failing to merge the offenses of first-degree felony trafficking in cocaine, possession of cocaine, and illegal manufacture of drugs with the offense of engaging in a pattern of corrupt activity for purposes of sentencing.

{¶ 28} In reviewing a trial court's determination of whether a defendant's offenses should merge for purposes of conviction, an appellate court reviews the trial court's determination de novo. *State v. Flood*, 10th Dist. No. 18AP-206, 2019-Ohio-2524, ¶ 25 citing *State v. S.S.*, 10th Dist. No. 13AP-1060, 2014-Ohio-5352, ¶ 28, citing *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, ¶ 1. " 'Appellate courts apply the law to the facts of individual cases to make a legal determination as to whether R.C. 2941.25 allows multiple convictions. That facts are involved in the analysis does not make the issue a question of fact deserving of deference to a trial court.' " *S.S.* at ¶ 28, quoting *Williams* at ¶ 25.

{¶ 29} R.C. 2941.25 provides:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 30} Walker argues the trial court erred when it failed to merge the offenses of first-degree felony trafficking in cocaine, possession of cocaine, and illegal manufacture of drugs with the offense of engaging in a pattern of corrupt activity for purposes of sentencing. "When the defendant's conduct constitutes a single offense, the defendant may be convicted and punished only for that offense. When the conduct supports more than one offense, however, a court must conduct an analysis of allied offenses of similar import to determine whether the offenses merge or whether the defendant may be convicted of separate offenses." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, ¶ 24.

{¶ 31} "To determine whether two offenses are allied offenses that merge into a single conviction, a court must evaluate three separate factors: the conduct, the animus, and the import." *State v. Harris*, 10th Dist. No. 15AP-683, 2016-Ohio-3424, ¶ 42, citing *Ruff* at paragraph one of the syllabus. "If any of the following is true, the offenses cannot merge and the defendant may be convicted and sentenced for multiple offenses: (1) the offenses are dissimilar in import or significance—in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, and (3) the offenses were committed with separate animus and motivation." *Ruff* at ¶ 25. Ultimately, if the harm resulting from each offense is separate and identifiable, the offenses are of dissimilar import and do not merge. *Harris* at ¶ 42, citing *Ruff* at ¶ 25.

{¶ 32} In conducting an analysis of whether two offenses are allied offenses of similar import, the Supreme Court of Ohio directs an appellate court to look beyond the statutory elements and to consider the defendant's conduct. "A trial court and the reviewing court on appeal when considering whether there are allied offenses that merge

into a single conviction under R.C. 2941.25(A) must first take into account the conduct of the defendant. In other words, how were the offenses committed?" *Ruff* at ¶ 25.

{¶ 33} Walker maintains that his conviction of engaging in a pattern of corrupt activity must merge because the underlying offenses were necessary prerequisites in order to find Walker guilty of engaging in a pattern of corrupt activity. However, the Supreme Court has held that "a RICO offense does not merge with its predicate offenses for purposes of sentencing." *Miranda* at ¶ 20. In *Miranda*, the Supreme Court explained that although a conviction of engaging in a pattern of corrupt activity is dependent upon the commission of predicate acts, the engaging in a pattern of corrupt activity charge also addresses the defendant's *additional* conduct of association with the enterprise and participation in conduct in furtherance of the enterprise. *Miranda* at ¶ 13 ("the conduct required to commit a RICO violation is independent of the conduct required to commit" the underlying predicate offenses); *State v. Beverly*, 143 Ohio St.3d 258, 2015-Ohio-219, ¶ 5. *See also State v. Christian*, 2d Dist. No. 25256, 2016-Ohio-516, ¶ 35, quoting *State v. Moulton*, 8th Dist. No. 932726, 2010-Ohio-4484, ¶ 38 ("[t]he argument that predicate offenses should be merged with a conviction for engaging in a pattern of corrupt activity has been consistently rejected by Ohio courts, on the basis that 'a RICO violation is a discrete offense that can be prosecuted and punished separately from its underlying predicate offenses' "). Indeed, "[t]he intent of RICO is ' "to criminalize the pattern of criminal activity, not the underlying predicate acts." ' " *Miranda* at ¶ 13, quoting *State v. Thomas*, 3d Dist. No. 1-11-25, 2012-Ohio-5577, ¶ 61, quoting *State v. Dodson*, 12th Dist. No. CA2010-08-191, 2011-Ohio-6222, ¶ 68. Thus, we do not agree with Walker that his conviction of engaging in a pattern of corrupt activity arose from the same conduct or had the same animus as the predicate offenses.

{¶ 34} As the trial court did not err in rejecting Walker's merger argument, we overrule the remaining portion of Walker's seventh assignment of error.

## VII. Disposition

{¶ 35} Based on the foregoing reasons, to the extent we can consider his argument, sufficient evidence supported Walker's conviction of engaging in a pattern of corrupt activity, the prosecutor's statements did not deprive Walker of a fair trial, Walker did not receive the ineffective assistance of counsel, and the trial court did not err in declining to

merge Walker's conviction of engaging in a pattern of corrupt activity with the underlying predicate offenses.  Having overruled the remaining portions of Walker's first, fourth, fifth, and seventh assignments of error that we deemed moot in *Walker*, and in accordance with the Supreme Court of Ohio's decision in *Dent*, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

DORRIAN, P.J., and SADLER, J., concur.