[Cite as *State v. Walker*, 2025-Ohio-4346.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 24AP-335 |
| v. | : | (C.P.C. No. 16CR-3447) |
| William L. Walker, Jr., | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on September 16, 2025

**On brief:** *Shayla D. Favor*, Prosecuting Attorney, and *Kimberly M. Bond*, for appellee. **Argued:** *Kimberly M. Bond*.

**On brief:** *Lisa M. Tome*, for appellant. **Argued:** *Lisa M. Tome*.

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Defendant-appellant, William L. Walker, Jr., appeals a judgment of the Franklin County Court of Common Pleas denying his petition for postconviction relief without an evidentiary hearing. For the following reasons, we affirm that judgment.

I. Facts and Procedural History

{¶ 2} On June 24, 2016, Walker was indicted with (1) one count of engaging in a pattern of corrupt activity, a first-degree felony in violation of R.C. 2923.32; (2) one count of trafficking in cocaine, a first-degree felony in violation of R.C. 2925.03; (3) one count of possession of cocaine, a first-degree felony in violation of R.C. 2925.11; (4) one count of illegal manufacture of drugs, a second-degree felony in violation of R.C. 2925.04; and

(5) two counts of trafficking in cocaine, fifth-degree felonies in violation of R.C. 2925.03. Each of the charges included an accompanying one-year firearm specification pursuant to R.C. 2941.141(A). Walker pleaded not guilty to all charges.

{¶ 3}  Plaintiff-appellee, State of Ohio, tried Walker with his two co-defendants, Alvin Clayton Dent, Jr., and Drakkar D. Groce. At trial, Lawrence E. Gauthney, a detective with the Columbus Division of Police, testified that community complaints about drug activity at 1639 Greenway Avenue caused him to conduct "spot checks," followed by longer periods of surveillance, at that address. (Tr. Vol. II at 396.) While watching the property, Detective Gauthney saw foot traffic "consistent with an up-and-running drug house." (Tr. Vol. II at 398.) Detective Gauthney next instigated a controlled purchase of crack cocaine at 1639 Greenway Avenue by using a confidential informant.

{¶ 4}  Using information gained through his surveillance and the controlled buy, Detective Gauthney obtained a warrant to search 1639 Greenway Avenue. The warrant permitted the police to search for and seize:

> Schedule II controlled substance, to wit: Crack Cocaine, as described in the Ohio Revised Code; papers indicating occupancy and/or ownership; drug paraphernalia; drug records; drug monies and/or proceeds; weapons; other evidence of illicit drug trafficking unknown at this time[.]

(Def.'s Ex. B, Mar. 4, 2019 Petition for Postconviction Relief.)

{¶ 5}  On March 29, 2016, Detective Gauthney led a team of law enforcement officers in executing the search warrant on the property. The three co-defendants were not at the house when the police executed the search warrant. Police, however, found and seized evidence indicative of drug trafficking activity from the house, including drugs, money, guns, ammunition, scales, and baggies.

{¶ 6}  During the search, Detective Gauthney discovered the house had a video surveillance system. Detective Gauthney found security cameras in three locations: (1) over the front door, (2) on a railing beside the back door, and (3) propped on top of a stand in the kitchen. Detective Gauthney also noticed a monitor and digital video recorder ("DVR") in the sitting room. When police entered the house, the monitor was active and showed live feed from the three security cameras. Detective Gauthney discovered that he could stand in the kitchen within view of the camera, look through the kitchen door into the sitting room, and see himself on the security monitor.

{¶ 7} The view of the kitchen security camera included the kitchen counter, cabinets, stove, and sink. In the kitchen cabinets, police found multiple baggies of powder cocaine and a crack cocaine "cookie," the solid white disc that forms when cocaine, water, and baking soda are mixed and boiled, then cooled and dried. (Tr. Vol. I at 489.) Police also found in the kitchen cabinets or on the kitchen counter an open box of baking soda, glass containers, baggies, a scale, and a razor blade. These items are used in the manufacture or packaging of crack cocaine. Additionally, scene photographs show a liberal dusting of white powder around and on top of the microwave sitting on the kitchen counter.

{¶ 8} Upon reviewing the video surveillance system, Detective Gauthney concluded "obviously they're recording . . . where the stove was placed, the microwave and the kitchen cabinets." (Tr. Vol. II at 447.) Detective Gauthney decided to seize the DVR.

{¶ 9} At trial, the state played video footage from the DVR while Detective Gauthney described the events on screen. In total, the state presented the jury with 25 video clips purporting to show 15 drug sales. All the video clips were recorded on March 29, 2016, the date on which the police executed the search warrant. In one video clip, Walker works with Groce and Dent to pack baggies of what appears to be crack cocaine. At one point, Dent hands Walker a baggie with approximately one-fourth of an ounce of crack cocaine in it, and Walker inspects the baggie and hands it back. At another point, Dent and Walker count large wads of cash. In two other video clips, Walker appears to cook crack cocaine and then conduct drug sales.[1]

{¶ 10} At the conclusion of the trial, the jury returned guilty verdicts on all counts against Walker. Because the jury did not find Walker possessed a firearm during these offenses, it did not attach the accompanying firearm specifications. In a judgment entry issued July 21, 2017, the trial court convicted Walker and sentenced him to an aggregate prison term of 20 years.

{¶ 11} On Walker's direct appeal of his judgment of conviction and sentence, this court affirmed Walker's convictions on all counts except for the count of engaging in a pattern of corrupt activity. *State v. Walker*, 2019-Ohio-1458, ¶ 92 (10th Dist.). The state then appealed. The Supreme Court of Ohio reversed our judgment and remanded the case

---

[1] This court's decision in *State v. Walker*, 2019-Ohio-1458, ¶ 8-12 (10th Dist.), contains a fuller description of Walker's activities in the video clips.

to this court for consideration of the issues we deemed moot. *State v. Dent*, 2020-Ohio-6670, ¶ 27. On remand, we affirmed the entirety of Walker's judgment of conviction and sentence. *State v. Walker*, 2021-Ohio-4321, ¶ 35 (10th Dist.).

{¶ 12} On March 4, 2019, Walker filed a petition for postconviction relief pursuant to R.C. 2953.21 in the trial court. In his petition, Walker argued that his trial counsel's failure to move to suppress the video evidence violated his Sixth Amendment right to effective assistance of counsel. Walker contended that the police unlawfully seized the DVR because it was outside the scope of the search warrant. The state opposed Walker's petition.

{¶ 13} The trial court stayed Walker's postconviction petition during the pendency of the appeals. Without a hearing, on April 30, 2024, the trial court issued a decision and entry denying Walker's petition. The trial court found that the DVR contained "evidence of illicit drug trafficking and was a record of the drugs." (Apr. 30, 2024 Decision & Entry at 5-6.) The warrant authorized the police to search for and seize "drug records" and "other evidence of illicit drug trafficking unknown at this time." (Def.'s Ex. B, Mar. 4, 2019 Petition for Postconviction Relief.) A motion to suppress, therefore, would have failed because the DVR was within the scope of the warrant. Consequently, the trial court concluded that Walker had not met his burden of submitting sufficient operative facts to support his claim of ineffective assistance of counsel.

## II. Assignments of Error

{¶ 14} Walker now appeals the April 30, 2024 judgment and assigns the following two errors for our review:

> [I.] THE TRIAL COURT ABUSED ITS DISCRETION AND ERRONEOUSLY DENIED DEFENDANT-APPELLANT'S PETITION FOR POST CONVICTION RELIEF WITHOUT CONDUCTING A HEARING IN VIOLATION OF R.C. 2953.21(D) AND DUE PROCESS OF LAW AS GUARANTEED BY THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION.
>
> [II.] THE TRIAL COURT ERRED IN DENYING DEFENDANT-APPELLANT'S PETITION FOR POST CONVICTION RELIEF ON THE MERITS WITHOUT A HEARING THEREBY DENYING HIM OF HIS RIGHT TO DUE PROCESS OF LAW AND THE RIGHT TO EFFECTIVE

ASSISTANCE OF COUNSEL IN VIOLATION OF THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION.

## III. Discussion

{¶ 15} By his first assignment of error, Walker argues the trial court erred in denying his postconviction petition without holding a hearing. We disagree.

{¶ 16} Ohio law permits a person convicted of a crime to petition the trial court to set aside his conviction on the basis that "there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States." R.C. 2953.21(A)(1)(a)(i). A criminal defendant seeking to challenge his conviction through a petition for postconviction relief is not automatically entitled to a hearing on the petition. *State v. Calhoun*, 86 Ohio St.3d 279, 282 (1999). Rather, the trial court, as gatekeeper, only grants a petitioner a hearing if he has met the burden for obtaining a hearing. *State v. Gondor*, 2006-Ohio-6679, ¶ 51. To grant a hearing on a postconviction petition, a trial court must "determine whether there are substantive grounds for relief." R.C. 2953.21(D). A petition presents a substantive ground for relief if the petition " 'is sufficient on its face to raise an issue that the petitioner's conviction is void or voidable on constitutional grounds, and the claim is one which depends upon factual allegations that cannot be determined by examination of the files and records of the case.' " *State v. Bunch*, 2022-Ohio-4723, ¶ 23, quoting *State v. Milanovich*, 42 Ohio St.2d 46 (1975), paragraph one of the syllabus.

{¶ 17} When determining whether a petition states a substantive ground for relief, "the trial court must consider the entirety of the record from the trial proceedings as well as any evidence filed by the parties in postconviction proceedings." *Id*. at ¶ 24, citing R.C. 2953.21(D). "If the record on its face demonstrates that the petitioner is not entitled to relief, then the trial court must dismiss the petition." *Id*., citing R.C. 2953.21(D) and (E); *accord Calhoun* at paragraph two of the syllabus ("[A] trial court properly denies a defendant's petition for postconviction relief without holding an evidentiary hearing where the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that petitioner set forth sufficient operative facts to establish substantive grounds for relief."). On the other hand, "[i]f the record does not on its face

disprove the petitioner's claim, then the court is required to 'proceed to a prompt hearing on the issues.' " *Bunch* at ¶ 24, quoting R.C. 2953.21(F).

{¶ 18} An appellate court reviews a trial court's decision to deny a postconviction petition without a hearing for an abuse of discretion. *Gondor* at ¶ 52. An appellate court may reverse a decision under the abuse of discretion standard if that decision is unreasonable, arbitrary, or unconscionable. *State v. Hickman*, 2024-Ohio-5747, ¶ 32.

{¶ 19} In his petition for postconviction relief, Walker argued that he was denied his constitutional right to effective assistance of counsel because his trial attorney did not move to suppress the video evidence the state presented at trial. Failure to file a motion to suppress does not constitute per se ineffective assistance of counsel. *State v. Spaulding*, 2016-Ohio-8126, ¶ 94; *State v. Brown*, 2007-Ohio-4837, ¶ 65. Rather, to prevail on an ineffective assistance claim, a defendant must meet the two-prong test set out in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the defendant must show that counsel's performance was deficient. *Strickland* at 687; *State v. Bradley*, 42 Ohio St.3d 136, 141 (1989). To meet that requirement when the alleged deficiency is the failure to move to suppress evidence, the defendant must prove that there was a basis to suppress the evidence in question. *Spaulding* at ¶ 94. " 'Where the record contains no evidence which would justify the filing of a motion to suppress, the [defendant] has not met his burden of proving that his attorney violated an essential duty by failing to file the motion.' " *State v. Michie*, 2020-Ohio-3152, ¶ 9 (10th Dist.), quoting *State v. Gibson*, 69 Ohio App.2d 91, 95 (8th Dist. 1980).

{¶ 20} If the defendant shows that counsel's performance was deficient, then the second prong of the *Strickland* test requires the defendant to prove prejudice to prevail. *Strickland* at 687; *Bradley* at 141-42. To demonstrate prejudice, the defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* at 694; *accord Bradley* at 142.

{¶ 21} Notably, because we review Walker's ineffective assistance claim in relation to the trial court's decision to deny Walker a hearing on his postconviction petition, we must apply a different standard than that applied to a decision on the merits of an appeal or on

the merits of a postconviction petition. To obtain a hearing on his postconviction petition, Walker did not need to definitively establish trial counsel's deficiency or resulting prejudice. *See Bunch*, 2022-Ohio-4723, at ¶ 27. Rather, the postconviction petition must be sufficient on its face to raise an issue as to whether Walker was deprived of the effective assistance of counsel, and Walker's claim must depend on factual allegations that cannot be determined by examining the record of his trial. *See id.*

{¶ 22} On appeal, Walker contends that his postconviction relief petition raised an issue as to whether his counsel was deficient, and this deficiency prejudiced him. According to Walker, his trial counsel was deficient because counsel had a reasonable basis on which to move to suppress the video evidence from the DVR. Walker maintains that the seizure of the DVR violated his constitutional rights because Detective Gauthney impermissibly exceeded the scope of the warrant when he seized the DVR, and the DVR did not fall within the plain-view exception to the warrant requirement.

{¶ 23} There is no dispute that Walker's claim for ineffective assistance of counsel relies on evidence not within the trial record. Walker included with his petition the search warrant, which was not part of the trial record. Therefore, our analysis focuses on whether Walker raised an issue as to whether his trial counsel was ineffective in failing to move to suppress the video evidence.

{¶ 24} The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Article I, Section 14 of the Ohio Constitution is nearly identical in language, and its protections are coextensive with the Fourth Amendment. *State v. Kinney*, 83 Ohio St.3d 85, 87 (1998).

{¶ 25} The Warrant Clause of the Fourth Amendment requires warrants to particularly describe the things law enforcement officers can seize. *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). "The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another." *Marron v. United States*, 275 U.S. 192,

196 (1927). In short, the terms of the warrant circumscribe the scope of the search. *Walter v. United States*, 447 U.S. 649, 656 (1980) (plurality). "If the scope of the search exceeds that permitted by the terms of a validly issued warrant . . . , the subsequent seizure is unconstitutional without more." *Horton v. California*, 496 U.S. 128, 140 (1990).

{¶ 26} When determining the scope of a warrant, courts interpret the warrant's terms in a commonsense and realistic manner, and do not apply hypertechnical scrutiny. *United States v. Trinh*, 665 F.3d 1, 15 (1st Cir. 2011); *United States v. Okorie*, 425 Fed.Appx. 166, 169, fn. 1 (3d Cir. 2011); *United States v. Phillips*, 588 F.3d 218, 223 (4th Cir. 2009); *accord United States v. Stephen*, 984 F.3d 625, 631 (8th Cir. 2021), quoting *United States v. Sturgis*, 652 F.3d 842, 844 (8th Cir. 2011) (per curiam) (" 'When considering whether a search exceeded the scope of a warrant, we look to the fair meaning of the warrant's terms.' "). "Agents may seize an item pursuant to a warrant even if it 'does not expressly mention and painstakingly describe it,' . . . because the specificity required may 'vary according to the circumstances and type of items involved.' " *United States v. Young*, 916 F.3d 368, 377 (4th Cir. 2019), quoting *Phillips* at 225 (first quote) and *In re Grand Jury Subpoena*, 920 F.2d 235, 239 (4th Cir. 1990) (second quote). A search warrant need not describe an item with elaborate detail to satisfy the Fourth Amendment; rather, the description must provide enough specificity to enable officers executing the warrant to identify the item to be seized with reasonable certainty. *Russell v. Harms*, 397 F.3d 458, 464 (7th Cir. 2005); *United States v. Mann*, 389 F.3d 869, 877 (9th Cir. 2004); *United States v. Hill*, 19 F.3d 984, 987 (5th Cir. 1994). "Determining whether a search exceeds the scope of its authorizing warrant is, like most inquiries under the Fourth Amendment, an exercise in reasonableness assessed on a case-by-case basis." *United States v. Loera*, 923 F.3d 907, 916 (10th Cir. 2019); *accord Alvix Laboratories, L.L.C. v. United States*, 795 Fed.Appx. 931, 932 (5th Cir. 2020); *United States v. Patel*, 429 Fed.Appx. 885, 888 (11th Cir. 2011); *Phillips* at 227. "In determining whether officers executing a search warrant acted reasonably, courts must examine only those 'facts available to the officers at the time.' " *Phillips* at 227, quoting *Garrison*, 480 U.S. at 88.

{¶ 27} In this case, Detective Gauthney obtained a warrant that authorized the search for and seizure of "drug records." (Def.'s Ex. B, Mar. 4, 2019 Petition for Postconviction Relief.) The trial court determined in its decision that the DVR contained

video evidence that constituted "a record of the drugs." (Apr. 30, 2024 Decision & Entry at 5-6.) Thus, the state contends, the seizure of the DVR was within the scope of the warrant because the video it contained was a "drug record."

{¶ 28} On appeal, Walker does not respond to the state's contention. Before the trial court, Walker relied primarily on *State v. Villolovos*, 2019-Ohio-241 (6th Dist.), to argue that Detective Gauthney exceeded the scope of the warrant in seizing the DVR. In *Villolovos*, the Sixth District Court of Appeals affirmed a judgment suppressing video evidence contained on a DVR seized pursuant to a search warrant. There, like in this case, the police obtained a search warrant for a residence after surveilling the residence and observing foot and vehicle traffic consistent with drug trafficking. *Id.* at ¶ 2. Although the warrant did not specifically identify DVRs or electronics as items to be seized, it did permit the seizure of "drug transaction records." *Id.* During the search, police officers found numerous security cameras attached to the outside of the residence and a DVR connected to a monitor in an upstairs bedroom. *Id.* at ¶ 3. The police seized the DVR. *Id.* Upon reviewing the video recordings on the DVR, the lead detective discovered that one of the exterior security cameras was pointed in the direction of narcotics that were located outside the house, between it and a neighboring house. *Id.* at ¶ 3, 11. The police had not observed any drug activity in that area before viewing the video. *Id.* at ¶ 11.

{¶ 29} The trial court granted the defendants' motions to suppress the contents of the DVR, finding its seizure violated the Fourth Amendment. *Id.* at ¶ 14. In relevant part, the state argued on appeal that the trial court erred in holding that the DVR was not specified in the search warrant. *Id.* at ¶ 16. The state contended that the police could seize the DVR as a "drug transaction record" because it contained a recording of individuals accessing a stash of drugs. *Id.* at ¶ 17. In rejecting that argument, the Sixth District Court of Appeals stated:

> [W]e agree with appellees that to characterize the DVR system as a "drug transaction record," . . . would require us to shoehorn the evidence into [a] general, ill-fitting categor[y]. The DVR system simply does not fit naturally into any of the general categories specified in the warrant.

*Id.* at ¶ 23.

{¶ 30} The trial court found *Villolovos* factually distinguishable from this case. We agree with the trial court. Unlike the police officers in *Villolovos*, Detective Gauthney was

able, during the search, to connect the video surveillance system to the drug manufacture and sale occurring at the house.  Because the security monitor was active when the police officers initiated the search, Detective Gauthney realized that the security camera in the kitchen was recording the kitchen cabinets and counter.  *See* Tr. Vol. II at 447 ("[O]bviously, they're recording . . . where the stove was placed, the microwave and the kitchen cabinets."). In the area of the kitchen being recorded, the police found all the items needed to cook and package crack for sale, including cocaine, baking soda, glass containers, baggies, a scale, and a razor blade.  The police also discovered white powder—the apparent remnant of prior crack cooking sessions—around and on top of the microwave.  Therefore, Detective Gauthney could reasonably conclude that the DVR contained a video recording of the production and preparation  of crack cocaine for sale.  Detective Gauthney thus acted reasonably in seizing the DVR as containing a "drug record."

{¶ 31} Moreover, courts have found that officers do not exceed the scope of a warrant permitting them to search for and seize "records" when they search or seize electronic media that could reasonably contain the records in question.  *United States v. Peters*, 92 F.3d 768 (8th Cir. 1996) ("the general term 'records' adequately covered the search of records in audio cassette form"); *United States v. Lucas*, 932 F.2d 1210, 1215-16 (8th Cir. 1991) (government could seize an answering machine and cassette tape because the warrant's authorization to seize records was sufficiently particular to include cassette tapes); *United States v. Reyes*, 798 F.2d 380, 382-83 (10th Cir. 1986) (warrant permitting the seizure of "drug trafficking records . . . identifying cocaine customers, sources, [etc.]" authorized agents to take a cassette tape containing discussions concerning the sale and purchase of drugs; "the seizure of a specific item characteristic of a generic class of items defined in the warrant did not constitute an impermissible general search").  Courts have recognized that "records" may exist in multiple formats, including electronic recordings.  In this case, a warrant authorizing the seizure of "drug records" included within its scope a DVR police could reasonably conclude contained a video recording depicting the production and preparation of drugs for sale.

{¶ 32} We recognize that Walker submitted an affidavit with his postconviction petition from an attorney, in which that attorney stated that the DVR was "not described in, and [is] therefore outside the scope of, the command portion of the warrant."  (Apr. 1,

2019 Belli Aff. at ¶ 5.) Whether a search is within the scope of a search warrant is a question of law. *United States v. Srivastava*, 540 F.3d 277, 287 (4th Cir. 2008); *United States v. Young*, 263 Fed.Appx. 710, 713 (10th Cir. 2008). Consequently, in his affidavit, the attorney does not testify to any fact, but only offers notarized legal argument. We, therefore, treat the attorney's opinion as merely an extension of the argument set forth in Belli's postconviction petition, not evidence.

{¶ 33} Given our conclusion that the warrant authorized the seizure of the DVR, we do not address Walker's arguments that (1) police could not lawfully seize the DVR under the clause in the warrant permitting the seizure of "other evidence of illicit drug trafficking unknown at this time" because that "catchall" clause violated the Fourth Amendment's particularity requirement, and (2) the video evidence was not admissible under the plain-view exception to the warrant requirement. (Appellant's Brief at 11.) These arguments are moot as the warrant permitted the seizure of the DVR as a "drug record."

{¶ 34} Because Detective Gauthney did not exceed the scope of the warrant when he seized the DVR, Walker's trial counsel did not have any basis on which to move to suppress the video evidence contained on the DVR. Walker, therefore, did not raise any issue in his postconviction petition as to his trial counsel's effectiveness. In the absence of any issue as to defense counsel's effectiveness, the postconviction petition did not state a substantive ground for relief and the trial court did not abuse its discretion in denying Walker's petition without a hearing. Accordingly, we overrule Walker's first assignment of error.

{¶ 35} By his second assignment of error, Walker argues that the trial court's denial of his postconviction relief petition without a hearing deprived him of due process and effective assistance of counsel in the postconviction proceedings. We disagree.

{¶ 36} Walker maintains that without an evidentiary hearing, his postconviction counsel could not fully develop the facts necessary to prove that his trial counsel was ineffective for failing to move to suppress the video evidence. According to Walker, his postconviction counsel needed an evidentiary hearing to elicit the foundational facts to demonstrate that Detective Gauthney could not lawfully seize the DVR under the catchall clause of the warrant or the plain-view exception. Thus, Walker argues, he was denied effective assistance of counsel in the postconviction proceedings, which he asserts

constitutes a violation of the Fifth, Sixth, and Fourteenth Amendments, as well as comparable provisions of the Ohio Constitution.

{¶ 37} First, we reject this argument for a practical reason: as we concluded in the deciding the first assignment of error, the search warrant authorized the seizure of the DVR as containing a "drug record." Therefore, whatever facts Walker's postconviction counsel might have developed in a hearing regarding the catchall clause or the plain-view exception are immaterial. As neither of those grounds could have succeeded in suppressing the video evidence, they could not have established trial counsel's ineffectiveness.

{¶ 38} Second, because there is no constitutional right to counsel in state postconviction proceedings, a petitioner cannot claim ineffective assistance of counsel in such proceedings.[2] *Shinn v. Ramirez*, 596 U.S. 366, 383 (2022); *Coleman v. Thompson*, 501 U.S. 722, 752 (1991). Walker, therefore, cannot use his postconviction counsel's alleged ineffectiveness as a basis to seek reversal of the trial court's denial of his postconviction petition without a hearing. Accordingly, we overrule Walker's second assignment of error.

## IV. Conclusion

{¶ 39} For the foregoing reasons, we overrule Walker's first and second assignments of error, and we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BOGGS and LELAND, JJ., concur.

---

[2] Tangentially, we note that an indigent defendant sentenced to death is statutorily entitled to appointed counsel in postconviction proceedings. R.C. 2953.21(J)(1). However, even so, such a defendant cannot challenge his postconviction counsel's ineffectiveness or incompetence in any phase of the postconviction proceedings or in an application to reopen a direct appeal. R.C. 2953.21(J)(2).